### OWINGS v. DAVENPORT

(141 S. E., 602)

1. TRIAL—STATEMENT, IN RULING ON INTRODUCTION OF TESTIMONY, THAT, WHETHER ACCOMMODATION INDORSER OR NOT, "HE" WAS JUST AS MUCH LIABLE, HELD NOT CHARGE ON FACTS.—Judge's statement, in ruling on introduction of testimony, that, "what difference does it make whether he was accommodation indorser or not, he is just as much liable," *held* not charge on facts.

2. TRIAL—STATEMENTS, IN RULING ON INTRODUCTION OF TESTIMONY, THAT "HERE IS A NOTE, NOTICE OF PROTEST WAIVED," AND THAT "HE TESTIFIED HE AGREED TO EXTEND THE TIME PROVIDED D. INDORSED IT," HELD NOT CHARGE ON FACTS.—Statements of Judge, in ruling on introduction of testimony, that, "what is the point you are trying to make—here is a note, notice of protest waived," and "he testified he agreed to extend the time, provided D. indorsed it," *held* not charge on facts.

3. TRIAL—CHARGE IN PAYEE'S ACTION AGAINST INDORSER, AS TO INDORSER'S LIABILITY, HELD NOT ON FACTS.—Judge's charge, in action by payee of note, against indorser, stating rules of law as to preponderance of evidence, presentation of note, liability of indorser, amount of liability of indorser as surety, effect of extension of time on his liability, interest, and attorney's fees, *held* not error as charge on facts.

4. BILLS AND NOTES—CHARGE ON LIABILITY OF INDORSER AS SURETY STATING RULES AS TO PRESENTATION AND EXTENSION OF TIME HELD NOT ERROR (CIV. CODE 1922, §§ 3733, 3735).—Judge's charge on liability of indorser as surety, stating rules of law as to presentation of note, amount of liability as surety, and effect of extension of time, *held* not error, in view of Civ. Code 1922, § 3733, providing that presentment for payment is dispensed with by waiver, and Section 3735, providing that, subject to provisions of article, when instrument is dishonored by nonpayment, immediate right of recourse to parties secondarily liable accrues to holder.

5. BILLS AND NOTES—NEGLIGENCE AND LACHES OF PAYEE IN NOT COLLECTING NOTE FROM MAKER HELD NO DEFENSE IN ACTION BY PAYEE AGAINST INDORSER (CIV. CODE 1922, § 3735).—Negligence and laches of payee in not collecting note from maker *held* no defense, in action by payee against indorser, since, after promissory note matures, holder has immediate right of recourse against all parties secondarily liable, under Civ. Code 1922, § 3735.

NOTE: As to release of indorser of note by failure to enforce liability of maker, see annotation in 18 L. R. A. (N. S.), 530; 3 R. C. L., 1273; 1 R. C. L. Supp., 1017.

Before ANSEL, J., County Court, Greenville, March, 1926. Affirmed.

Action by G. W. Owings against W. H. Davenport. From a judgment in favor of plaintiff, defendant appeals.

The Court's charge and the first two exceptions as appearing in the transcript of record are as follows:

Mr. Foreman and Gentlemen of the Jury: I will read you the pleading (reads). This action is based on the fact that he is surety, and it had to be presented to him, or he would not be liable, and that the plaintiff had promised to extend the time of payment, which would relieve the surety from responsibility.

I charge you the rule of evidence on this side of the Court is when a plaintiff sues a defendant he must prove his case by the preponderance of the evidence, the greater weight of it, not necessarily the greater number of witnesses, but that evidence which brings conviction to your minds as to the truth of the transaction.

If the defendant sets up in his answer an independent defense, he must prove it by the preponderance of the evidence.

I will read you the note introduced in evidence (reads): "The maker, drawer, and indorser and guarantors severally waive presentment before payment—demand and protest and notice of protest and dishonor of note." I charge you whoever indorses that note is as much bound as the original maker because they all strictly waive the right of presentation. I will read you from Section 3762, Volume 3, of the Code: "A waiver of protest whether in the case of a foreign bill of exchange or other negotiable instrument, is deemed to be a waiver not only of a formal protest, but also of presentment and notice of dishonor." Also Section 3760: "Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." I base my ruling on that Section of the law. A man has the

right to waive it.    Also reads Section 3718—what is an indorser.

It is a question for you to determine—Was this note executed by A. R. Putnam, and was any indorsement put on it by Davenport?   If you are satisfied by the preponderance of the evidence it was made by Putnam and indorsed by Davenport, then he is bound by what is in that note.   If he wants to, he can indorse it for 100—he could say I sign surety for 100, but, if he indorsed it without anything but the name, he is liable for what is in the note, if it is a valid and legal note.   You have heard the testimony as to whether or not any money was loaned and all the circumstances.   The law does not allow me to tell you any of the facts because you are the judge of them.   It is my duty to give you the law.   If I am wrong, I can be corrected by a higher Court. You apply the facts you have heard to the law, and find your verdict accordingly.

Was there any extension of time—was there any agreement to extend it if certain things were done?   Extending the time might relieve the surety on bond—if any note due ten days after date and the owner should extend the time without notice to the surety, then the surety would be relieved because his contract was to pay it at a certain time. Was there any contract between Owings, payee, and Davenport in reference to this note—was it to be extended?   Was there any contract between the parties to extend it, and, if so, was it carried out, and was the extension given?   I charge you, when a man signs a paper, he is bound by what is in it, and is not excused because he is expected to read it.   The Court has said he is bound by it even if he cannot sign his name.   Therefore, if the note was for 1,000, and the defendant thought it 100—he is supposed to read it, lest fraud he set up in the answer.

If you are satisfied Putnam signed and Davenport indorsed it, and no part of it has been paid, then the plaintiff

is entitled to the full amount with interest and 10 per cent. attorney's fees. If you are not satisfied by the preponderance of the evidence that he is liable according to the law and the facts, you say: "We find for the defendant," and sign your name as foreman. I will give you the note that has been introduced in evidence so you can take it with you. If you find by the preponderance of evidence the plaintiff is entitled to a verdict, you say: "We find for the plaintiff the amount," calculating the interest and attorney's fees. Whatever you believe the truth to be let it be manifested by the verdict you render.

## Exceptions

In due time defendant served on plaintiff's attorney notice of intention to appeal to the Supreme Court from the orders, rulings, and judgment in this case upon the following grounds and exceptions:

(1) Because his Honor, the county judge, erred in expressing his opinion in his ruling before the jury during the introduction of testimony, when he expressed himself in the following words: "What difference does it make whether he was accommodation indorser or not—he is just as much liable"—same being (a) on the facts; (b) incorrect, misleading, and prejudicial to defendant.

(2) Because his Honor, the County Judge, erred in expressing his opinion in his ruling before the jury during the introduction of testimony, as follows: "What is the point you are trying to make—here is a note, notice of protest waived. Mr. Henry: I am making this point—this man extended the time. He had agreed with Putnam to extend it, and he did. Court: He testified he agreed to extend the time, provided Davenport indorsed it. Mr. Henry: He virtually accepted the new note. Court: This is not competent"—same being (a) on the facts; (b) incorrect, misleading, and prejudicial to defendant.

*Mr. John C. Henry,* for appellant, cites: *Giving new credit or giving time to maker, exonerates the indorser:* 1 Bay, 466; Id., 177, 178; 1 Mill Const., 367; 2 Brev., 21; 3 Brev., 182; 13 S. C., 353; 1 Mill Const., 373; 1 Bail., 412; 114 S. C., 185. *Surety has a right to stand upon the contract as he made it; if altered in any respect he will not be bound:* 41 S. C., 219; 17 S. C., 1; 23 S. C., 590; 51 S. C., 124, 125; 3 R. C. L., 334; Id., 503.

*Messrs. Dean, Cothran & Wyche,* for respondent, cite: *Cases distinguished:* 1 Mill Const., 367; 114 S. C., 185; 1 Bay, 466.

February 14, 1928.

The opinion of the Court was delivered by MR. ACTING JUSTICE J. WM. THURMOND.

This action was commenced in January, 1925, in the Greenville County Court on the note hereinafter set out in full and came on for trial March 1, 1926, before Judge Ansel and a jury, and resulted in a verdict for the plaintiff for the amount demanded.

The complaint is in the usual form against an indorser on a promissory note.

The answer sets up a number of defenses, to wit, a general denial; that the defendant was a surety only on the note, and it was so agreed, understood and intended between the parties; that at its maturity the note was not presented for payment, and for that reason the defendant was discharged from liability thereon; that, after defendant indorsed said note, he did not know it was unpaid until December 20, 1924, after Putnam, the maker, was adjudicated a bankrupt; that defendant never saw the note after indorsing it until the reference was held in said bankruptcy matter; that plaintiff, without the knowledge or consent of the defendant, agreed to extend the time for the payment of the note in controversy in this case from August 13, 1924,

to November 13, 1924, without the knowledge or consent of the defendant and to his prejudice, and this discharged the defendant from liability thereon; that the plaintiff accepted $20.40 as interest on November 13, 1924, as consideration for said extension; that the plaintiff was guilty of negligence and laches for failing to enforce his legal remedies in the courts against Putnam, the principal, and to reduce his claim to judgment when same was collectible, and delayed action for seven months and four days after maturity date, and until Putnam was adjudicated a bankrupt; that he was then forced to take his place as an unsecured creditor, when he might by due diligence have been a judgment creditor, and therefore secured, and all to the prejudice of the defendant; that the plaintiff is precluded from recovery by his negligence and laches. The plaintiff filed his claim against the bankrupt estate of Putnam, the maker, and therefore elected to proceed against Putnam, and such election has discharged this defendant. A copy of the note follows:

"Owings, S. C., May 13, 1924.

"On August 13, 1924, days after date I promise to pay to the order of G. W. Owings $1,000.00 one thousand and no/100 dollars, payable at the Bank of Owings, Owings, S. C. Value received with discount before, and interest after, maturity at the rate of 8 per cent. per annum, payable annually, with 10 per cent. on the amount due as attorney's fees in case payment shall not be made at maturity. The makers, drawers, indorsers, and guarantors severally waive presentment for payment, demand, protest, and notice of protest of nonpayment and dishonor of this note. Due ———. [Signed] A. R. Putnam."

Reverse side: "W. H. Davenport."

It appears that on February 13, 1924, Putnam delivered to the plaintiff his promissory note for $1,000, payable on May 13, 1924, with the endorsement of W. H. Davenport

thereon, and that the plaintiff deducted the interest, and paid to Putnam the balance in money; that on May 13, 1924, Putnam delivered to the plaintiff a new note which was a renewal of the indebtedness evidenced by first note. The new note was payable August 13, 1924, for the sum of $1,-000, was signed by Putnam, and indorsed by W. H. Davenport, and was payable August 13, 1924. It seems that the first note was delivered to Putnam when the second note was delivered to the plaintiff. This suit is on the second note above set out.

The following are excerpts from the testimony of the plaintiff:

"The note represents actual cash loan. This is a renewal of the first note. * * *

"Q. When the note was first made, what did Davenport say after you let Putnam have the money? A. I was in the mill afterwards to see him with reference to some fertilizer, and he told me Putnam got the money all right, and I said 'Yes'; he said 'Well, we will see you get your money.' * * * He (referring to Davenport) told me he would pay it and I would get the money; that he did not have the money at that time, and asked me to extend the time. * * * I told Putnam I would renew the note provided Davenport would indorse it again. * * * He (referring to Davenport) admitted he indorsed it, and has never denied indorsing it."

The following are excerpts from the testimony of W. H. Davenport:

"I didn't get any of this money he claimed Putnam borrowed from him, and I didn't intend to borrow any. * * * I indorsed that note for $1,000. I signed that note. Mr. Owings did not come to me at any time during these transactions. * * * Putnam did not come back to me on August 13, 1924. I put my name on the back of two notes each time for $100. I never had any demand upon me at any time by Owings before Putnam went into bankruptcy.

* * * The first knowledge I had that the note was not paid was when Owings came to me when Putnam was in bankruptcy. * * * He (referring to plaintiff) did not ask for a payment, and I did not tell him I was going to pay it. * * * I am responsible for $100, all of which I will pay. * * * I do not swear that was my signature on the back of that note. I signed it with a pen for $100, what Putnam said he wanted. * * * It was no use to tell Owings that it was for $100, and not $1,000. I did not tell any one it was for $100. I kept it to tell the jury."

W. C. Freeman, a son-in-law of Davenport, and his wife, Mrs. W. C. Freeman, both testified that they saw the first note indorsed by W. H. Davenport and it was for $100.

Owings in reply testified that he never had a note signed by Putnam for $100.

The defendant has made fourteen exceptions, two based on the rulings of the Court, and twelve to the Judge's charge. Exceptions 1 and 2 may be considered together, and each makes the contention that the Judge in his rulings expressed his opinion, and thereby charged on the facts. Neither of these exceptions can be sustained, for the rulings were not a charge on the facts. *State v. Atkinson,* 33 S. C., 100; 11 S. E., 693; *Autrey v. Bell,* 114 S. C., 370; 103 S. E., 749.

Exceptions 3, 7, 8, and 9 may be grouped. By them the appellant contends that the plaintiff agreed to extend the time for the payment of the note in question without the knowledge, or consent of the defendant, Davenport, and this discharged the defendant. Exception 3 also makes the point that the charge was on the facts; but a reference to the charge does not sustain this contention. The maker of the note was not sworn in the case.

There is no testimony showing an agreement on the part of the plaintiff to extend the time for the payment of the note, unless a new note was executed and indorsed by Dav-

enport; hence these exceptions are without merit, and unsupported by any testimony.

Exceptions 4, 5, 6, 10, 13, and 14 may be considered together. By them the appellant contends that his Honor charged on the facts in violation of the Constitution of the State. A reference to the charge shows a misconception of the charge. It was not on the facts, but simply a construction of the law applicable to the case. Said requests further complain of the Judge's charge on the liability of an indorser.

Section 3733, Volume 3, Code of Laws 1922, reads:

*"When Dispensed With.*—Presentment for payment is dispensed with: * * * Subd. 3, By waiver of presentment express or implied."

See, also, *Patterson v. Orangeburg Fert. Co.,* 117 S. C., 140; 108 S. E., 401.

The note in controversy waives presentment, demand for payment, protest, and notice of nonpayment.

Section 3735, Volume 3, Code of Laws, 1922, reads:

*"Right of Holder on Dishonor.*—Subject to the provisions of this Article, when the instrument is dishonored by nonpayment, an immediate right of recourse to all parties secondarily liable thereon accrues to the holder." *First National Bank of Hartsville v. Wood et al.,* 109 S. C., 75; 95 S. E., 140; L. R. A. 1918–D, 1061; *F. & M. Bank v. Bank of Hemingway,* 113 S. C., 140; 101 S. E., 746.

Exceptions 11 and 12 raise the point that the plaintiff was guilty of negligence and laches in not collecting his said note from the maker, Putnam. This position of the defendant vanishes before Section 3735 Code, *supra.*

After a promissory note matures, under that Section of the Code, and the decisions construing it, the holder of a negotiable promissory note has immediate right of recourse against all parties secondarily liable thereon. Under the facts and circumstances of this case, the plaintiff would

have been entitled to a directed verdict, but for the defense of the defendant that he did not indorse the note offered in evidence.

On this question the jury decided against the defendant; hence the judgment of the Greenville County Court is affirmed.

MESSRS. JUSTICES COTHRAN, BLEASE, STABLER, and CARTER concur.