## STATE v. ATKINSON.

1. A motion for continuance is addressed to the discretion of the Circuit
   Judge, and his refusal is not error reviewable on appeal.
2. Error cannot be imputed to the trial judge for refusing to quash an
   indictment containing two counts charging two distinct offences, when

the "Case" does not show that any motion to quash was ever made, nor where a *nolle prosequi* had been entered as to one count before trial had.

3. Under an indictment against a physician for prescribing liquor to one upon whom he was not in actual attendance, in violation of law, evidence of the number of prescriptions issued by defendant within a specified time, to be filled at the same drug store, is relevant to the issue of defendant s good faith in issuing the prescription in this case.

4. The conduct of the trial judge in taking away from the prosecuting attorney the cross-examination of defendant's witnesses, may be unusual and not to be commended, but it is not error of law reviewable on appeal.

5. The mode of conducting a trial must necessarily be left largely to the discretion of the Circuit Judge, and no abuse of that discretion is to be found in telling a witness that "I don't remember" is not a sufficient answer.

6. An inquiry addressed by the judge to a witness, and his reply thereto, upon a matter not pertinent or relevant to the case under consideration, furnishes no ground for a new trial.

7. A statement of the particular issues of fact which the jury should pass upon, and of the testimony throwing light upon such issues, is not a charge on the facts.

8. This court cannot be expected to review any action of the Circuit Court, when the "Case" fails to show what such action was.

9. A failure to grant a new trial on affidavits alleging misconduct in the jury room, counter-affidavits being submitted, sustained.

10. Where it does not appear in the "Case" that any requests to charge were submitted or refused, this court is not called upon to consider exceptions alleging a request to charge and its refusal, and error in such refusal.

11. Under section 1749 of the General Statutes, as it now reads (18 Stat., 694), the penalties provided for violating section 1751, as to illegal prescriptions for intoxicating liquors, applies to towns in which the sale of liquor has been prohibited by special statute, as well as where it is prohibited under the operation of the local option law.

12. A provision in the General Statutes, that "any person violating sections 1750 and 1751 of this chapter shall upon conviction be fined, &c.," makes the violation of either one of these sections punishable.

Before PRESSLEY, J., York, November, 1889.

This was an indictment against Dennis C. Atkinson for unlawfully giving a prescription for beer. During the cross-examination by the solicitor of one of defendant's witnesses, the following occurred:

"By the Court: Now, Mr. Roumillat, do you swear solemnly, upon your oath, that this whole matter was not pretensive; not by previous arrangement between you and Dr. Atkinson, and that you kept him there for that purpose? Witness: I swear before God that it is not so. Q. You don't keep him there for that purpose? A. Yes, sir; I will swear to that. Q. And that this same thing goes on there every day, and that there was no previous arrangement between you and Dr. Atkinson about that matter? A. Yes, sir; I will swear to that. Q. How, then, did you keep him there? A. I didn't keep him at all. He has his office there. The rule generally is, that a physician always has his office in a drug store. I have a father who runs a large drug store in Charleston, and there are four physicians' offices in the drug store. Q. And you swear that prescriptions could be given you to the number of 146, or more, without arousing your suspicion? A. Yes, sir."

And again: "By the Court: Q. I want to know if you swear that it is the practice of respectable drug stores to allow sick persons to come into the store with their friends and drink the prescriptions in the store? Is that the habit of the respectable drug stores in Yorkville? A. It is always this way. Q. You can't dodge me. You must answer the question. I want to know if it is the habit of sick persons to come in with their friends, and the sick person to divide the medicine with his friends? A. I have nothing to do with it. If Dr. Atkinson gives a prescription, they can drink all they want. Q. I understand you to say that Dr. Atkinson gives prescriptions to him to give the other friends, and drink the prescriptions in the store? A. No, sir; I didn't say he gave prescriptions for that purpose. Q. I ask the question, and I require you to answer it. Is it the practice of persons to whom he gives prescriptions in your store, to go in there with other friends and drink the prescriptions in the store? A. No, sir; it is not the practice. Q. Did they not do it on this occasion? You heard what Mr. James said and what Mr. Bratton? A. I was not in here when Mr. James spoke, or Mr. Bratton. I was— The Court: I am done with you. I wanted the jury to see how far you would swear."

The solicitor having resumed the cross-examination of this witness, the following occurred:

"Q. Who came in with Mr. Bratton? A. I can't tell you. Q. There was such a crowd? A. No, sir; not so much of a crowd. Q. Did any person come in with him? A. I say I can't remember. The Court: Can't remember won't do. It is not an answer to the question. A. I can't remember, sir, to save my life." And, again, when the defendant was being cross-examined by the solicitor: "Q. Didn't you go to Bratton and ask him to swear at the preliminary examination that he had dyspepsia? A. I don't remember. [The Court: 'Don't remember' won't do. I always write down 'No' when that answer is given.]"

Mr. Hart, prosecutor, being on the stand in reply, the Court said: "You heard me say to-day that I never committed myself to the prohibition movement, but I want to know why it is that the town council does not prosecute Mr. Roumillat for selling whiskey without a license? A. We have tried him in three cases, and he expects to be tried before you. We tried him in three cases, and fined him to the full extent of the law."

The judge charged the jury as follows:

In your county and village, licenses are totally prohibited, but inasmuch as there are a great many people, and a great many wise physicians, who believe that ardent spirits are necessary, not only as a medicine, but necessary as a tonic to many of their patients, their opinions are to a certain extent yielded to in the passage of this law, and in order to enable them to use their judgment, and allow persons having chronic dyspepsia or other diseases in which they think ardent spirits will aid a recovery, the law gives them the right to prescribe it; but the clear intention of the law is, that it shall be *bona fide* prescribed to persons in that condition, and not for persons in health. I do not decide whether this is a case of that sort or not. The interest that I feel in this law makes it painful to hear all over the State—it pains me to hear—that that noble profession, that profession which has been looked up to by the best people of the whole world, and even of the heathen world, as probably the noblest profession, the profession of medicine—it pains me to hear that there are, perhaps, men in that profession who are, perhaps, lowering and disgracing

their profession. It pains me to hear that such things are being done by members of my own profession, and when matters are done by members of my own profession which are calculated to bring the blush upon the nobler members of the profession, it cannot but arouse indignation among other members of the profession. And so it is with the medical profession, although nothing that I say has any bearing on this case. I am alluding to the law generally. I think the legislature ought to modify the law, and any physician who would give one of these pretensive prescriptions, his license should be declared void. That profession is too high and noble, and it is in every way too important to have it lowered by persons who do not feel the dignity and importance of their profession. I am saying this as applicable to the law itself, and not as applicable to this case at all. It is for you to judge whether a thing is applicable to this case.

What does the law mean when it refuses to grant a license to sell spirituous liquors, and says a druggist may sell it when he has the prescription of a physician in actual *bona fide—bona fide*, two Latin words, italicized, meaning in good faith—in attendance upon a person as his patient? The law says that when a physician is actually, in good faith, in actual attendance, when a person is his patient, he may prescribe spirituous liquor for that patient, and I agree wholly with those physicians who hold, in spite of the extreme prohibitionists, that it is necessary, for I was kept alive once, through a long spell of typhoid fever, through the prescription of my physician, and my physician prescribed it to me for a long time afterwards as necessary for the restoration of my constitution. In such cases, I cannot agree with my friends who are extreme prohibitionists. I was a total abstinence boy and a total abstinence man until I was 45, and gave over under the advice of my physician.

The question for you is this: Did Dr. Atkinson, on the 11th of September, prescribe beer to Mr. Bratton for the purpose of enabling him to buy it at that drug store? Did he? If he did, did he do it in good faith, for that is what the law says; did he do it in good faith, being in actual attendance upon him as a patient? That is what you are to decide, and you are to judge of that not by what he says, or by what anybody else says, but

from the testimony, and from all the circumstances say whether that beer was given to a sick man, to a man whom he believed to be sick, giving it to him as his patient. Is that what you understand by being in actual attendance? Take it as he said: that he came in and said, "my kidneys are out of order; I have difficulty in making urine, and I, without making any examination, without testing his symptoms, without seeing what was the cause and foundation of his disease, and with no examination whatever, just upon his simple word that his kidneys were out of order, prescribed a dozen bottles of beer." Take that in connection with the fact, that on the same day, it is testified to you, that he prescribed spirituous liquors to 125 or 130 persons, on the same day. What is your conclusion? Was the physician acting in actual attendance upon him at that time, in good faith as a patient? Was he, or not? That is the question that you are to answer, and I regard the question as an important one, because if he did it in good faith, he is entitled to acquittal. But if he didn't do it in good faith, he is disgracing a most honorable profession, and he should be punished for it. If he is innocent, let him go; but if he is not innocent, then he should be taught that he is doing an injury to the country. The requests to charge are not allowed.

Affidavits appear in the "Case," charging the foreman of the jury with going to the door of the jury room and asking whether a physician, who had his office in a drug store, could give a prescription under any circumstances, and then informing the jury that such a physician could not. The foreman and the sheriff submitted affidavits that such an inquiry was made by the foreman to the sheriff, but that the sheriff declined to talk with the foreman.

As to all other points involved, the opinion states the case.

*Messrs. Finley & Brice,* for appellant.

*Mr. McDonald,* solicitor, contra.

June 12, 1890. The opinion of the court was delivered by
MR. JUSTICE McIVER. The defendant having been convicted

under an indictment charging that he, "being a physician, unlaw-
fully did give a prescription for spirituous or intoxicating liquors,
to wit, one dozen bottles of beer, to one R. Moultrie Bratton, he,
the said Dennis C. Atkinson, not then and there being in actual
*bona fide* attendance upon the said R. Moultrie Bratton as a
patient," appeals upon numerous grounds set out in the record,
which are too long to be inserted here. Indeed, it is scarcely
necessary to consider them in detail; for, although numerous and
encumbered with unnecessary statement, they really present but
few questions for us to determine, and these we will proceed to
consider.

The first and fourth grounds, imputing error to the Circuit
Judge in refusing a motion for continuance, certainly cannot be
sustained in the face of an unbroken line of decisions, for a great
length of time, that such a motion is addressed to the discretion
of the Circuit Judge.

The second ground alleges error in refusing defendant's motion
to quash the indictment, upon the ground that it contained two
counts, in one of which defendant was charged with unlawfully
giving a prescription to one person, and in the other to another
person. A conclusive answer to this ground is, that the "Case,"
as prepared for argument here, does not show that any such mo-
tion was made to the Circuit Judge, or that he made any ruling
on that subject. We have so often had occasion to say, that this
court can consider nothing which does not appear in the "Case,"
that surely it cannot be necessary, at this late day, to repeat the
reasons for such a determination. We may add, however, that
it does appear in the "Case," that before the trial commenced
the solicitor entered a *nolle prosequi* as to the first count, and
hence, even if it had appeared that such motion had been made,
it certainly could not have been sustained, as the indictment upon
which the defendant was tried and convicted really contained but
one count. The same remarks apply to the third ground of appeal.

The fifth, tenth, and eleventh grounds impute error to the Cir-
cuit Judge in allowing witnesses to be asked as to the number of
prescriptions given by defendant, within a specified time, for
intoxicating liquors to various persons, as found on the files of
the druggist in whose store the defendant kept his office. It seems

to us that such testimony was clearly competent where the real issue was, as in this case, whether the defendant had *bona fide* given the prescription, upon which the indictment was based, to the person therein named, as a patient upon whom he was actually attending as a physician, or whether the whole thing was not pretensive, and a mere device to evade the law. If the fact was, as testified to by some of the witnesses, that the defendant had given a very large number of such prescriptions to various persons, who happened to be in town on a public occasion, all to be filled at that drug store, it was certainly very pertinent to the main issue, as to whether the prescription was given in good faith, or with a view to evade the law prohibiting the sale of intoxicating liquors.

The sixth, eighth, and fourteenth grounds seem to impute error to the Circuit Judge, not in intimating his opinion to the jury in his charge, but in taking the cross-examination of several of the witnesses out of the hands of the solicitor and conducting it himself in such a way as to prejudice the defendant, as it is alleged. While such a course on the part of a Circuit Judge is, perhaps, unusual, and possibly not to be commended, we know of no law which forbids it, and, therefore, we cannot say that there was any error of law in this respect; and to that we are confined in cases of this kind.

The seventh and ninth grounds allege error in the remark made by the Circuit Judge to two of the witnesses, that their responses to certain questions—"I don't remember"—would not do. Whether such a remark would be appropriate or not depends largely upon the nature of the question to which such a response was made. We can easily conceive of a case in which such a response would so manifestly indicate a purpose on the part of a witness to evade a truthful answer, that it might be proper, and certainly not illegal, for the judge to require a more direct answer, just as if a witness should decline to answer at all. But be this as it may, the mode of conducting a trial must necessarily be left largely to the discretion of the Circuit Judge, and we cannot say that there was any such abuse of discretion in this case as would warrant this court in interfering.

The twelfth ground is based upon the idea that the testimony of Mr. Hart, when recalled, was not in reply to any testimony

adduced by the defence.  This is a mistake.  Testimony had
been offered on the part of the defence, or rather in the cross-
examination of defendant's witnesses, the number of prescrip-
tions given by defendant within the time specified had been men-
tioned, and Mr. Hart was called in reply for the purpose of show-
ing that the number was larger than that mentioned by defend-
ant.

The thirteenth ground relates to an outside matter which does
not seem pertinent to the present case.  It is based upon an in-
quiry addressed by the Circuit Judge to Mr. Hart, who it seems
was acting as intendant of the town at the time, as to why the
town council had not prosecuted the druggist, Roumillat, for sell-
ing whiskey without a license, and was a matter not relevant to
the case under consideration.

The fifteenth ground complains that the judge erred in charg-
ing the jury upon the facts, in violation of the constitutional
provision upon that subject.  We do not think that this ground
can be sustained, for the part of the charge in which it is claimed
that the Circuit Judge violated the constitutional provision,
seems to be nothing more than a statement of the particular issues
of fact which the jury should pass upon, together with such testi-
mony as threw light upon such issues.

The sixteenth, seventeenth, and eighteenth grounds of appeal
may be summarily disposed of by the statement that it does not
appear that any such motions as constitute the basis of those
grounds were ever submitted to, or passed upon, by the Circuit
Judge.  It is true that it does appear that notice of a motion for
a new trial was given, upon the ground of improper conduct on
the part of the jury, based upon certain affidavits set out in the
"Case," but it does not appear whether any, and if so, what,
action was taken under said notice.  On the contrary, it does
appear that these affidavits are followed by a consent order, modi-
fying the sentence upon certain conditions therein named, and
the natural inference would be that, upon obtaining the order
modifying the sentence, the motion for a new trial was aban-
doned.  But be that as it may, it is sufficient for us to say that
this court cannot be expected to review any action of the Circuit
Court where the "Case," as prepared for argument here, fails to

show what such action was. We may say, however, that even if these motions were properly before us, we do not think they could be sustained.

The nineteenth and twentieth grounds of appeal are based upon the refusal of certain alleged requests to charge, but as the "Case" fails to show that any such requests were submitted to the Circuit Judge, it is very manifest that these grounds cannot, for that reason, be sustained. While the "Case" does show that "the requests to charge are not allowed," it entirely fails to show what the requests were. The fact that the nature of such requests do appear in the exceptions or grounds of appeal, cannot help the matter; for, as has been frequently held, this court cannot act upon any statement which appears only in the exceptions or grounds of appeal, for the very obvious reason that while the "Case" is open to amendment, the exceptions are entirely under the control of the appellant, who may frame them in such terms as to him may seem best, and the respondent has no means of correcting any erroneous statements that may be made therein. It is therefore very manifest that it would be unsafe, and might result in great injustice, for this court to act upon any statement found only in the exceptions, and we have invariably declined to do so, except where such statement is admitted to be correct.

But while this is the well settled rule, from which we have no disposition to depart, because we are satisfied that it is generally most conducive to the ends of justice, yet we desire to say, in this particular case, that even if the rule should be disregarded, these two grounds of appeal could not be sustained. Even if it should be conceded that his honor refused to charge, as requested, "that Yorkville not being a local option town, city, or village, they could not find the defendant guilty under the indictment," we do not think there would have been any error in such refusal. Such request was based upon the terms of section 1749 of the General Statutes of 1882, as they stood prior to the amendment introduced by the act of 1884 (18 Stat., 694), and ignored entirely the effect of that amendment. The section as it originally read was as follows: "This chapter shall not apply to any city, town, or village in which the sale of ardent spirits is now or shall hereafter be prohibited by legislative enactment," and as

such sale had been prohibited in the town of Yorkville by legis-lative enactment (act of 1882, 17 Stat., 946), and as section 1751, under which defendant was indicted, is found in that chap-ter, there might have been great force in the argument that the section under which defendant was indicted did not apply to the town of Yorkville, as it was not a local option town, but was a town in which the sale of ardent spirits was prohibited by legis-lative enactment.

But it appears that the legislature, doubtless with a view to remedy this defect in their legislation, passed the act of 1884 (18 Stat., 694), amending section 1749 of the General Statutes, so that it should thereafter read as follows: "Sections 1746, 1747, and 1748 of this chapter shall not apply to any city, town, or village in which the sale of ardent spirits is now or shall here-after be prohibited by legislative enactment." So that all of the provisions of the chapter, except those contained in the three sections above mentioned, which relate only to local option, apply as well to towns in which the sale of spirituous liquors is prohib-ited by legislative enactment as to those towns in which it is prohibited under the provisions of the local option law. It is clear, therefore, that section 1751, found in that chapter as it now reads, and as it read at the time the offence charged against defendant was committed, applies to the town of Yorkville, not-withstanding the fact that it is not a local option town.

The twentieth ground of appeal could not be sustained, even if it had appeared that the request to charge therein referred to had been made and refused. It is based upon the theory that a person could not be convicted, or rather could not be punished, unless it was shown that he had violated both sections 1750 and 1751 of the General Statutes of 1882. It is true that the lan-guage of section 1752, fixing the punishment for violation of these sections, is not as clear and distinct as it might have been; but we think the intent of the legislature is sufficiently obvious. The language of section 1752 is as follows: "Any person violat-ing sections 1750 and 1751 of this chapter shall, upon conviction, be fined," &c., and the argument is that the punishment there prescribed cannot be imposed unless a person is charged with, and convicted of, having violated both of those sections. But as

it appears plainly that those two sections relate to two entirely distinct and different things, and refer to two distinct classes of persons—the former forbidding druggists from selling except upon the prescription of a regular practising physician, and the latter forbidding physicians from giving prescriptions for spirituous liquors "except when actually in *bona fide* attendance upon a patient," it is very obvious that the legislature intended to provide for the punishment of two distinct and different offences, either of which might be committed independently of the other. The phraseology used in section 1752 is an awkward attempt to avoid unnecessary repetition of words, and manifestly means the same thing as if the legislature had said: "Any person violating section 1750 and any person violating section 1751 of this chapter, shall, upon conviction, be fined," &c.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.