12659

STATE v. MITCHUM

(148 S. E., 184)

342

*Messrs. Dinkins & Stukes,* for appellant,

*Mr. Frank A. McLeod,* for respondent.

May 9, 1929.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendant Mitchum and one James Frasier were separately indicted for violation of the prohibition law, but by consent were tried together. Mitchum was found guilty of transporting and receiving alcoholic liquors for unlawful purposes and was sentenced by the Court to imprisonment for a period of twelve months, four months of the time being suspended after the service of eight. He now appeals to this Court.

By his first exception, appellant charges the presiding Judge with error in placing the trial jury in the custody of two bailiffs who were witnesses for the State. It appears from the record that the trial of the case was begun on September 27, 1927, and that the jury were kept together that night in charge of two bailiffs, one of whom, Peavy, had already testified in the case, while the other, Windham, testified on the following day. We may say that under the usual proceedings in the trial Court, the presiding Judge does not know what particular bailiff is in charge of the jury unless his attention is called to it, and doubtless this was true in the present case.

While the placing of a trial jury in the custody of one who is a witness in the case is to be condemned (*State v. Douglas,* 115 S. C., 483, 101 S. E., 648, 8 A. L. R., 656), it does not appear that such course in the present case was reversible error. After attention had been directed, by a question of appellant's counsel, to the fact that the witness Windham, with Peavy, had been in charge of the jury the night before, the presiding Judge permitted the Solicitor to ask Windham whether he or Peavy had done or said anything in the presence of the jury in connection with the case or had had any conversation about the case with any member of the jury, to which the witness replied that they had not. Mr. Dinkins, counsel for the defendants, thereupon disclaimed any purpose on his part, in asking the question, to intimate anything irregular whatsoever, or to cast any reflection upon the witness or anybody else, and stated

that he merely intended to identify Windham and Peavy and to show that Windham had been acting as an officer there for 30 years. It is evident from this statement of counsel that he himself was satisfied that what had been done was in no way harmful to his client. We cannot say, from the facts disclosed by the record, that placing the jury in the custody of the two witnesses was prejudicial to the appellant, and this exception is overruled.

During the trial of the case the presiding Judge questioned several of the witnesses, and the appellant alleges that in so doing he committed error, in that his examination emphasized certain testimony which had been given by witnesses for the State, discredited the testimony of the appellant's witness Berry, and was argumentative and prejudicial. The appellant relies upon the case of *State v. Furtick,* 147 S. C., 82, 144 S. E., 839, as supporting his contentions.

In the *Furtick case* the Court discussed at some length the question here involved, and stated that "the presiding Judge is vested with a wide discretion in the progress of the trial, the eliciting of the truth of the issue," but that there are limits to his discretion, and quoted the following language from *State v. Keehn,* 85 Kan., 765, 118 P., 851, as being a clear statement of his power and duty in the trial of a case: "The purpose of a trial in a criminal case is to ascertain the truth of the matters charged against the defendant, and it is a part of the business of the trial Judge to see that this end is attained. He is a vital and integral factor in the discovery and elucidation of the facts, and, whenever in his judgment the attorneys are not accomplishing the full development of the truth, it is not only his right, but it is his duty, to examine and cross examine the witnesses."

Also, as showing his limitations, the Court quoted from *Hart v. State,* 14 Ga. App., 364, 80 S. E., 909, as condensed in a note to L. R. A., 1916-A, 1192: "While great caution should be used in its exercise, the trial Judge has the right, in his discretion, to question the witnesses during the trial, in order to elicit the truth, and this discretion will not be

controlled except where it appears that the manner in which the Judge exercised his right tended unduly to impress the jury with the importance of the testimony elicited, or would be likely to lead the jury to suppose that the Judge was of the opinion that one party rather than the other should prevail in the case."

This Court then went on to say: "In view of the well-known fact of the great influence of the presiding Judge upon the minds of a jury, who are quick to seize upon any intimation by word or gesture from him, it is better to leave the examination of witnesses to those charged with that duty, in the absence of a plain omission to elicit evidence for or against a defendant."

Tested by the principles stated in the *Furtick case,* we do not think that the examination of witnesses by the trial Judge in the present case was error. In that case, the view of the majority of the Court was that the information elicited by the trial Judge had no direct bearing upon the facts of the case and tended to discredit the defense of alibi set up by the defendants. In the present case, the examination was directed to eliciting information that tended to develop the truth of the issue and in no way discredited any witness for the appellant. Nor do we think that the questioning, though more or less frequent, was argumentative in character or indicated any judicial opinion upon the facts to be proved. This assignment of error, therefore, is without merit.

The State introduced testimony tending to show that whisky was found by the officers in the car driven by the appellant. The theory of the defense was that the whisky had been brought to Mitchum's house by Harris, one of the witnesses for the State, and placed by him in Mitchum's automobile. Appellant's mother, who lived with him, testified that Harris and his wife had come to the Mitchum home on the morning in question and that she had had a conversation with them. When appellant attempted to show by this witness what the conversation was, the following took place:

"Q. Did he say he had already been to your house that morning?

"The Solicitor: We object.

"Mr. Dinkins: This is the Harris we claim brought the whisky there.

"The Court: You can show that he brought it there, but don't relate the conversation.

"Mr. Dinkins: He is practically a defendant, if your Honor please.

"The Court: In your theory.

"Q. You say he did have a conversation with you when he came back up there?

"A. Yes, sir.

"The Solicitor: Don't answer.

"The Court: Here is my proposition: I understand it is your theory that Harris palmed all this liquor off on the defendant?

"Mr. Dinkins: Yes, sir.

"The Court: Well, it looks like you ought to be able to show by somebody, 'I saw so and so.'

"Mr. Dinkins: I wanted to show by this witness they had been there previously that morning.

"The Court: You want to prove by this woman—

"Mr. Dinkins: That they said they had previously been there that morning.

"The Court: You might as well prove it; you have already said before the jury what it is.

"Q. Did they say they had already been there that morning? A. Said they had passed there."

The appellant alleges that the Court erred in his ruling and comment as follows, in that the jury was impressed that the Court discredited the defendant's theory of the case and his testimony and that of his witnesses:

"The Court: Here is my proposition: I understand it is your theory that Harris palmed all this liquor off on the defendant?

"Mr. Dinkins: Yes, sir.

"The Court: Well, it looks like you ought to be able to show by somebody, 'I saw so and so.' "

The remarks objected to were made by the Court in connection with an effort by appellant to introduce in evidence certain hearsay testimony, which was properly held inadmissible; it is evident that the Court merely indicated to appellant's counsel that if he could produce some one who could testify that he had seen what counsel was attempting to show, such testimony would be competent, as distinguished from hearsay evidence which was incompetent. This could not have discredited appellant's theory of the case or the testimony in his behalf, but only indicated to him the sort of testimony that would be admissible for the purpose of proving his theory. This assignment of error is over-ruled.

The appellant also imputes error to the trial Court in refusing to admit the testimony of Mrs. Mitchum and Berry, witnesses for the defense, relative to certain statements made to them by Harris, a witness for the State, although no foundation had been laid, when Harris was on the stand, to contradict him. The testimony was hearsay and the Court committed no error in refusing to admit it.

Again, the appellant claims that the trial Court erred in charging the jury as follows: "There are any number of verdicts that may be returned in these cases. I am not going to attempt to enumerate all of them." The error assigned is that this charge was confusing to the jury and prejudicial to the defendant.

It is the duty of the trial Judge, as an essential part of his charge, to instruct the jury as to what verdicts may be found—and all of them—in the trial of any case, under the evidence adduced. The charge here complained of does not meet with the approval of this Court, and if no further instructions had been given to the jury as to verdicts that might be found with respect to the defendant

Mitchum, the case would be remanded for a new trial. The Court, however, submitted to the jury only two counts against Mitchum, namely, receiving and accepting, and transporting, and, immediately following the charge complained of, instructed them: "For instance, in the case of the defendant Ashby Mitchum, it is within your province to return a verdict of 'guilty,' which would mean guilty of receiving and accepting for unlawful use and of transporting. Or it is within your province to return a verdict of guilty of receiving and accepting, and not guilty of transporting; or it is within your province to return a verdict of guilty of transporting and not guilty of receiving and accepting, or it is within your province to return a verdict of not guilty."

When all that the trial Judge said with respect to the verdicts that might be found in the appellant's case is taken together, it is clear that there could result no possible confusion in the minds of the jury, for the reason that his instructions were complete as to the various verdicts that might be rendered under the evidence in the case.

The appellant, finally, complains that the trial Court committed error in charging the jury as follows:

"Crime may be proved by circumstantial evidence as well as by the direct testimony of eyewitnesses, but in order to warrant a conviction on the former the facts and circumstances relied upon to show guilt must be proven beyond a reasonable doubt."

The error here alleged is that the charge indicated to the jury that to warrant conviction by direct testimony of eyewitnesses the proof need not be beyond a reasonable doubt. This position is unsound. The Court, in making the charge complained of, was instructing the jury, not generally as to the law of reasonable doubt, but specifically as to that of circumstantial evidence. He said: "By direct evidence of a fact is meant the testimony of persons who have perceived its existence by means of their senses—as where a person sees a crime committed and comes into Court and testifies as

to what he saw. By indirect or circumstantial evidence is meant the proof of some other fact or facts from which, taken either singly or collectively, the existence of the particular fact in question may be inferred as a necessary consequence. Crime may be proved by circumstantial evidence' as well by the direct testimony of eyewitnesses, but in order to warrant a conviction on the former the facts and circumstances relied upon to show guilt must be proven beyond a reasonable doubt, and such facts and circumstances must be consistent with each other and with the guilt of the accused, and inconsistent with any other reasonable theory of his innocence, and must satisfy the jury of his guilt beyond a reasonable doubt."

From the foregoing charge it is seen that the Court, after defining direct evidence and circumstantial evidence, told the jury that crime may be proved by either, but stated to them that in order to warrant a conviction on circumstantial evidence certain elements must concur, namely, that the facts and circumstances relied upon to show guilt must be proved beyond a reasonable doubt, that such facts and circumstances must be consistent with each other and with the guilt of the accused, and must be inconsistent with any reasonable theory of his innocence, and must satisfy the jury of his guilt beyond a reasonable doubt. All that the Court said with reference to the law of circumstantial evidence must be considered together, and when this is done it is evident that he was charging the jury as to the safeguards which the law throws around the consideration of such evidence when it is sought thereby to establish the guilt of an accused; one of such safeguards being indicated by the language complained of.

Before giving the alleged objectionable instruction, the Court had charged the jury fully and correctly as to the law of reasonable doubt, and this general charge applied to direct as well as to circumstantial evidence: "I charge you that the burden of proof is on the State, as in every original criminal

case, to prove the guilt of the defendants beyond a reasonable doubt. That doesn't mean beyond all doubt, nor does it mean beyond all moral certainty, but it means a well founded or substantial doubt growing out of the evidence; a doubt for which you, as jurors, can give an honest reason from the testimony. Now, have you any doubt of that kind as to the guilt of these defendants, or one of them? If you have, it would be your duty to return a verdict of not guilty. On the other hand, if the State, by the testimony adduced upon that stand, has proved the guilt of the defendants beyond a reasonable doubt, as I have defined that term to you, then it would be equally your duty to return a verdict of guilty."

■ When the whole charge is considered together, as it should be, it is seen that the appellant's objection is without merit.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, BLEASE and CARTER concur.

MR. JUSTICE BLEASE (concurring) : Ordinarily, I would favor a reversal in this case because of the statements made in his charge by the presiding Judge, as follows: "There are any number of verdicts that may be returned in these cases. I am not going to attempt to enumerate all of them, but it is within your province to attempt to return one or more verdicts, depending upon your view of the testimony, depending upon what weight you give the testimony, depending upon what conviction the evidence carries to your minds."

The language particularly objectionable, it seems to me, was the statement to the effect that the Judge would not attempt to enumerate all the verdicts which the jury might return. As pointed out in my concurring opinion in *State v. Smoak*, 142 S. C., 37, 140 S. E., 251, I think a trial Judge should always make it plain to a jury the verdicts which can be rendered in a criminal case.

In this case, however, in addition to what Mr. Justice Stabler has said as to the quoted charge of the presiding Judge, I call attention to another matter, which, in my opinion, corrected what I think was error. At the end of the Judge's charge, the Solicitor stated that he only asked for a verdict of conviction against the defendant Frasier on the charge of manufacturing. Thereupon the Court so charged the jury and added that the defendant Mitchum could only be convicted on the charges of receiving and accepting for unlawful use and that of transporting. The final statement of the Judge was sufficient to cure his former statement, which, if left entirely alone, was certainly harmful as I view it.