14368

STATE v. ANDERSON *ET AL.*

(188 S. E., 186)

528

Before STOLL, J., Anderson, February, 1936. ▉▉▉

▉▉▉▉▉▉▉▉▉▉▉

*Mr. L. G. Southard,* for appellants, ▉▉▉

▉▉▉▉▉▉▉▉▉▉▉

*Messrs. Rufus Fant, Solicitor,* and *A. H. Dagnall,* for the State, ▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉

November 2, 1936.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

At the 1936 February term of the Court of General Sessions for Anderson County, the appellants were convicted of the murder of one W. A. Daniel, a taxicab driver, and sentenced to death by electrocution.

The undisputed facts regarding the killing show that a cold-blooded and brutal murder was planned and carried into execution, the only motive therefor being that the appellants desired the possession and use of an automobile. A detail statement of the gruesome facts surrounding the killing is unnecessary to a decision of the case, and are, therefore, purposely omitted. We have, however, painstakingly reviewed the voluminous record. Upon the trial of the case on circuit, the sole defense was that of insanity of the defendants-appellants, who were first cousins.

The killing occurred on January 11, 1936. At the 1936 February term of the Court of General Sessions for Anderson County, on an indictment charging appellants jointly

with the murder of W. A. Daniel, the Grand Jury found a "True Bill," and on February 6, 1936, the State announced ready for trial. Thereupon, counsel for the appellant, Sam Anderson, made a motion for a continuance of the case as to him on the ground that the wife of this defendant was seriously ill and unable to attend Court, and was a material witness in his behalf. In support of the motion, there was filed an affidavit of Dr. J. Bennett Townsend, the personal physician of Mrs. Anderson, that she was confined to her bed suffering from influenza, having at that time a temperature of 102 and pulse of 84, and that she was not physically able to leave her bed. In further support of the motion an affidavit of the appellant Anderson was filed, in which it was stated that his wife was a material witness in his behalf on the charge for which he stood indicted, and that he needed and desired the comfort, support, assistance, advice, presence, and counsel of his wife in his trial.

The State strenuously opposed a continuance of the case for the term, and upon motion, or upon the suggestion of the solicitor, the presiding Judge requested two other physicians to confer with Dr. Townsend, make an examination of Mrs. Anderson, and report to the Court as to her condition. Let it be here recorded that all parties disclaimed the slightest intention of any reflection on Dr. Townsend, who is an outstanding and most reputable physician. On the same day, these two physicians, Dr. B. A. Henry and Dr. W. Martin, reported that they had examined Mrs. Anderson and found she had an attack of influenza, her temperature running from 100 to 102, her pulse exceedingly high, and that she was on the verge of an attack of pneumonia; that sometimes one so affected would get well in a few days, and then again hang on for a good long time; that just what this case would do they knew not, but possibly she might be able to attend Court in a week; that it would be unsafe for her to come to Court under that time. Dr. Townsend also reported he had no reason to change his written statement which had

been filed with the Court, and when the presiding Judge asked if in his opinion it would be wise to bring Mrs. Anderson into Court "next week," frankly replied: "Next week's a pretty long time. I couldn't answer that   \*  \*  \*."

Following the above, and fully recognizing the decision of this Court in the case of *State v. Williamson,* 115 S. C., 315, 105 S. E., 697, the solicitor suggested that the case be continued until Wednesday of the following week (February 12, 1936), and that on "Tuesday we could have some physicians or get in touch with Dr. Townsend, and if at that time her condition is such that we could see it would be useless to try to try it that week, then there would be a continuance then, or see what the situation is next Tuesday and tentatively at this time continue it until Wednesday." The Judge then announced he would not force the defendant-appellant to trial "today" but refused to continue the case for the term. Following the ruling of the Court on the motion, it was announced in open Court by counsel for appellants that the suggested plan of the solicitor as to inquiring on the following Tuesday of the condition of Mrs. Anderson so as to determine if the case would be tried during that week or a continuance for the term be had was both satisfactory and convenient to them. Thereupon, it was announced in open Court, at the request of counsel for the appellants and the solicitor, that all witnesses, both for the State and defense, were excused until the following Wednesday morning, but the witnesses were admonished to be back in Court at that time.

On February 11 (Tuesday) Dr. Martin reported to the Court that the condition of Mrs. Anderson had greatly improved, but due to her weakened condition he did not think then that she would be able to sit up in Court all day long prior to Friday. Dr. Townsend also stated that while it was a difficult matter to tell what was going to happen in the next day or two, if she continued to do as well as she was doing she could come to Court the latter part of the week,

on Friday, but was unable to state if she could attend by Thursday.

The Court refused on February 11 (Tuesday) to either continue the case for the term or definitely set a day during the week, but postponed action until the next morning, February 12, in order to ascertain the condition of Mrs. Anderson. On the morning of February 12, and in accordance with understanding announced in open Court as between counsel for the State and the defense, the certificate following was read into the record:

*"To Whom It May Concern:*

"This is to certify that I examined Mrs. Sam Anderson this morning at 8:30. She still has no temperature and is recuperating very nicely, although she is still weak from her influenza. My opinion this morning is that Mrs. Anderson could attend Court by Thursday afternoon, February 13, 1936, without any danger to herself.

"[Signed] J. W. Martin

"J. W. Martin, M. D.

"[Signed] J. Bennett Townsend, M. D."

After the reading of the above certificate, the transcript of record shows that the following transpired:

"The Court. Gentlemen of the defense, any objections to setting this case for trial at three o'clock tomorrow? That's in keeping with that affidavit.

"Mr. Barron. It might be set for that hour, if Your Honor pleases, and in that event that we will have a report, I presume, on this lady at that time and see where we are. I don't want to waive my motion.

"The Court. Oh, you don't waive anything.

"Mr. Barron. As I understand from the opinion of these affidavits, she will probably be ready to come into Court tomorrow afternoon, and I suggest—

"The Court. By starting the trial in the afternoon session, it will give her an opportunity to rest and be fresher the next morning.

"Mr. Barron. Yes, sir.

"The Court. Is that satisfactory to the State?

"Mr. Fant. Yes, Your Honor.

"The Court. All right, we will set the case for trial at three o'clock tomorrow.

"Mr. Barron. As I understand, Your Honor, if the report at that time is that she isn't able to come into court at that time, we will have a certificate from the physician at that time.

"The Court. I understand if she's not able to report, if she's in the care of the physicians, they will send a report. However, I am not asking for any further report unless as her physicians they see fit to make a report.

"Mr. Barron. I would like the Court to order that if, in any event, she is not able to be here, that the physicians so report.

"The Court. I take it, Mr. Barron, a reputable physician, if he has got a patient not able to report to court, it's his duty to look out for the patient and that he will do so.

"Anything else to come up this morning, Mr. Solicitor?

"Mr. Fant. No, sir, Your Honor.

"Mr. Barron. If Your Honor pleases, I will make an announcement to witnesses. All of the witnesses for the defendants in the case of Sam Anderson and Sam Powell be on hand tomorrow evening at three o'clock."

It should be noted here that upon the trial of the case on circuit, Hon. P. D. Barron was of counsel for appellants.

On February 13 (Thursday) at 3 o'clock p. m., the State announced ready for trial. Thereupon, counsel for appellants made a motion for a continuance of the case, raising the question of the mental capacity of appellants to commit a crime. On this phase of the case, and the exceptions relating thereto, we later herein devote more time. The motion to continue the case for the term having been refused, the Court directed the clerk to, "Give us a jury." While it is

lengthy, we quote in full from the record immediately following the direction to the clerk to "Give us a jury."

"Mr. Fant. Your Honor please, we would like for the jury to be sworn on their *voir dire*.

"The Court. Very good, sir.

"Mr. Barron. One minute, if the Court pleases! We would like to call our witnesses to see who is here.

"Mr. Southard. Your Honor, Dr. Horton, Dr. Sanders, Mr. King, Mr. Waltors and Mr. Gaines are absent; they have been put under subpoena in this case of Sam Powell. And we think most of the witnesses in the case of the State against Sam Anderson will be present, but Mrs. Lydia Anderson is under subpoena, the defendant's wife, and isn't here. I don't know where she is. I haven't seen her or communicated with her. Dr. Acker, who is a material witness for the defendant, isn't here. I understand he is in the city. But I want that ascertained before we go to trial. All the witnesses have been put under bond and bound over to be present in Court.

"The Court. We will get them here for you if they can be got.

"Mr. Southard. If they are out of the county, Your Honor, I want to ascertain about that before we go to trial.

"The Court. How do you expect to ascertain?

"Mr. Southard. I haven't had any report on Mrs. Lydia Anderson, Your Honor. I don't know anything about her —the defendant's wife.

"The Court. Well, unless she's been subpoenaed to come to court—

"Mr. Southard. She has been subpoenaed and is under subpoena to come into court. As I understand it, she is still in the hospital. I know if I had the flu I wouldn't want to come out on a day like this. I haven't had any report on her from any of the physicians.

"The Court. Well, she's your witness.

"Mr. Southard. Yes, sir, and we subpoenaed her, Your Honor, and it's her business to be here; and the reason why she isn't here, according to the showing, was because she couldn't be here, and I haven't had anything other than that. Have you heard from her, Mr. Fant?

"Mr. Fant. I understood Dr. Martin told the deputies down in jail about a half hour before we convened that she was able to come to court.

"Mr. Southard. I haven't seen her and I haven't had anything from her.

"Mr. Dagnall. We will have an officer 'phone for the local witnesses for counsel.

"Mr. Fant. We have an officer now 'phoning for Dr. Acker. Dr. Acker is more or less indisposed and doesn't want to come until we need him.

"Mr. Southard. That's all right, I don't need him now, if he will be here.

"Mr. Fant. He will be here.

"The Court. Are you ready to proceed with the jury?

"Mr. Barron. Yes, Your Honor.

"The Court. All right, give us a jury, Mr. Clerk. Put them all on their *voir dire.*"

It will be seen that when the trial was entered upon, there was no motion for a further continuance on the ground that Mrs. Anderson was not able to be present; there was no showing or attempt to make a showing that she was still incapacitated and unable to attend the trial; there was no offer to submit in writing what she would testify to if present; and on the other hand, when the Court inquired if counsel were ready to proceed, Mr. Barron answered: "Yes, Your Honor."

We have probably devoted more time to the exceptions relating to the refusal of the trial Judge to continue the case as against Sam Anderson on account of the illness of Mrs. Anderson than is warranted, but it will readily be seen that in overruling these exceptions, we have not even modified

the holding in the case of *State v. Williamson, supra,* relied upon by appellants.

Exceptions 1, 5, and 6 are overruled.

There is nothing in the record from which the Court could have assumed that the hospital authorities had refused to allow Mrs. Anderson to leave the institution until her bill had been paid, thus preventing her from attending the trial, and Exception 9 is overruled.

Exceptions 2 and 3 relate to the refusal of the trial Judge to grant a continuance of the case as against both appellants, and order them confined in the State Hospital for the Insane at Columbia for a period of thirty days for the observation of their mental condition, as authorized by Section 6239, Code of 1932.

These exceptions directly raise the question if upon the plea of insanity being injected as a defense, the statute makes it mandatory that the trial Judge order such defendant or defendants, as the case may be, placed in the State Hospital for observation, and thus automatically force a continuance of the case for at least thirty days. And these exceptions also fairly raise the question, if the statute is not mandatory, did the trial Judge commit an abuse of discretion in failing to have appellants committed to said hospital for observation?

We are inclined to the opinion, after a careful study of the wording of Section 6239, that it was not the intention of the Legislature to make it compulsory that one charged with a crime, who sets up the defense of insanity and irresponsibility, be committed to the hospital for observation, but that it is discretionary with the trial Judge. The statute says the Judge "is authorized to commit to the State hospital any person charged with the commission of any criminal offense who shall, upon the trial before him, be adjudged insane, or in whom there is a question as to the relation of mental disease to the alleged crime, whether such question is raised by the prosecution or defense, or it appears

to the judge from any evidence brought before him or upon his own recognition."

To hold that every defendant charged with a crime, and who sets up a plea of insanity or irresponsibility on account of mental condition, can thereby force a continuance of his case for at least thirty days, would be an unreasonable construction to place upon the statute, unless the language thereof clearly made it mandatory. The motion was made to commit the appellants to the State Hospital, based upon affidavits of the fathers of the respective appellants, showing that Anderson had suffered two severe head injuries, one when a child, the other in recent years, and that he had contracted syphilis, and that since the last head injury and the contracting of the disease, which had been pronounced cured, his whole disposition had changed; and depicting various abnormalities in his mental condition, and acts and conduct on the part of Anderson which tended to show mental irresponsibility.

In the affidavit concerning Powell, it was stated that from the age of three years, he had suffered from epilepsy, had always been of a low degree of mentality, which further deteriorated as the years passed; had never been able to go to school; had insane ideas; imagined that people had it in for him; was dangerous at times; and had cravings for alcoholic beverages.

While both fathers expressed the opinion that their respective sons were insane, no facts were shown from which it could be said that either Anderson or Powell did not known the difference between right and wrong, and after all, this is the test where it is attempted to excuse one for the commission of a crime, when the defense is based on insanity or mental irresponsibility.

We cannot say that the trial Judge committed an abuse of discretion in refusing to continue the case, and commit the appellants for observation. Although the affidavits above referred to were greatly amplified in the

testimony of the fathers of the appellants on the trial of the case, and quite a number of witnesses corroborated their testimony concerning the mentality and escapades of appellants, no further motion was made for their commitment for observation.

Severe injuries to the head, having syphilis, and suffering from epilepsy can and frequently does produce such a mental condition as to make the unfortunates irresponsible for their acts—cause them not to be able to distinguish between right and wrong—and in the trial of the case great latitude was allowed counsel for appellants in the introduction of medical textbooks, and all other testimony tending to show the irresponsibility of appellants, sufficient possibly to have warranted the jury in recommending to mercy, but a careful reading of all of the testimony does not raise any serious doubt that the appellants knew they were doing wrong.

■ Exception 4 complains of the language of the trial Judge in his reference to the affidavits of the fathers of appellants when passing on the motion, based on these affidavits, to commit appellants to the State Hospital.

The trial Judge was refusing the motion, which had necessarily been made in open Court, and was stating his reasons therefor, and while ordinarily an expression of opinion by a Judge as to the weight of the testimony of any witness would necessarily find lodgment in the minds of the jury, yet, in this instance, he was merely stating that which is known to every man of any experience, and that which with impunity could have been argued to the jury in the presentation of the State's case. If counsel for appellants felt that their clients' defense had been prejudiced, they should have then and there called it to the attention of the Court to the end that such prejudice or ill effects could have been removed, even to the granting of a continuance of the case or the drawing of a new venire of jurors if necessary. Where preliminary motions are made, followed by a lengthy trial, necessitating frequent rulings, it would indeed be re-

markable if some isolated statement falling from the lips of the Judge could not, with some plausibility, be claimed as prejudicial to one side or the other. However, in his charge to the jury, the trial Judge had this to say: "Now you are the sole judge of the facts, with what (which?) I have nothing to do. The Court merely passes upon the competency or relevancy of the evidence; that is, it says what evidence you can consider, but it places no weight upon the evidence." If appellants felt that the remarks of the Judge in passing on the motion to commit them were prejudicial, then an opportunity to remove the alleged harm was again open by submitting an appropriate request to charge.

The exception is overruled.

Exceptions 7 and 8 complain that the solicitor committed prejudicial error in his cross examination of the witness, Alvin Williamson.

It is true that the cross examination of this witness came dangerously near the border line of attacking the reputation of the appellant Powell, and had continued for some time when the solicitor asked the witness Williamson the following question: "You and Bub Anderson were in the whiskey business together, weren't you? Not Bub Anderson—Sam Powell?" The witness replied: "No, sir, we was not."

"Mr. Southard. Under the case of the State against Bolding (Bolen) I don't think they have any right to pursue this line of testimony. We haven't objected, but I really think it's reversible error for the Solicitor to go into it.

"The Witness. I don't mind answering the question.

"The Court. Mr. Foreman and gentlemen of the jury, if any testimony of this witness or any other witness has a connection with either one of the defendants in any liquor transaction, that must not be considered by you in any respect as evidence against such defendant. The general rule is that other crimes, other offenses cannot be shown except as to the credibility of the witnesses or, in certain cases, where it goes to show interest. For instance, in a case of forgery they can

show that at the time other forgeries had been committed, or the intention of the party to pass worthless paper, or things of that kind. So in this case don't consider any testimony relative to a liquor transaction as to this defendant as evidence against him; it merely goes as to the credibility of this particular witness.

"Mr. Fant. Yes, sir, Your Honor, that was the purpose of it. Q. You told us a while ago you were not in the business together, and now you say you were.

"The Court. I wouldn't pursue that any further, Mr. Solicitor.

"Mr. Fant. All right, Your Honor."

It will be seen from the above that when counsel for appellants entered a left-handed objection, the Court ruled that the line of cross examination should not be further pursued and admonished the jury not to consider any of the testimony of the witness in reference to liquor transactions against either one of the defendants. If appellants felt aggrieved, or that the admonition of the Judge had not cured the error, then a motion for a mistrial should have been made. It is, of course, elementary that unless a defendant puts in issue his reputation, then it cannot be attacked. And it has been held by this Court that the asking of questions by a solicitor, a *quasi*-judicial officer, which has the effect of attacking the reputation of a defendant whose reputation has not been put in issue, constitutes prejudicial error. See *State v. Bolin,* 177 S. C., 57, 180 S. E., 809. But as pointed out above, when the error was called to the attention of the Court, the trial Judge did everything within his power to correct same, and if counsel for appellants felt that it amounted to more than harmless error, they should not have waited until a jury convicted their clients, but should have then and there moved for a mistrial.

Under the circumstances as disclosed by the record, the exception is overruled.

Exception 10 is without merit, and is overruled. The trial Judge clearly and ably charged every phase of the law applicable to the case.

Affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.