16936

THE STATE, Respondent, v. EUGENE VICKERS, Appellant

(84 S. E. (2d) 873)

*Messrs. C. Yates Brown,* and *Harry L. Cline,* of Spartanburg, *for Appellant,*

*J. Allen Lambright, Esq., Solicitor,* of Spartanburg, *for Respondent*

December 6, 1954.

G. BADGER BAKER, Acting Associate Justice.

The appellant, Eugene Vickers, was tried during the July, 1953, term of Court of General Sessions for Cherokee County under an indictment containing two counts. The first charged him with assault and battery with intent to rape; the second charged him with assault and battery of a high and aggravated nature. The jury returned a verdict finding the appellant guilty of assault and battery of a high and aggravated nature. The appellant made motions for a directed verdict and for a new trial, which motions were overruled.

There are four exceptions alleging four errors in the trial of the case: (1) Is there any error in the trial court's cross-examination or examination of one of appellant's witnesses; (2) Did the trial Judge properly refuse cross-examination of prosecutrix relating to the results of a medical examination immediately following the alleged assault; (3) Did the trial Judge err in refusing to instruct the jury as to an inference or presumption from the failure of the State to produce a witness; and (4) Was the evidence such as to have required the trial Judge to direct a verdict of not guilty.

The offenses with which the appellant was charged, as developed upon the trial of the case, were alleged to have occurred at a social gathering, denominated "a birthday party," while the prosecutrix and the appellant were taking a short walk as the result of a game played by those attending the party, and in which they, as guests, participated.

The main issue in the trial was whether appellant assaulted the prosecutrix, which is alleged by the State to have occurred beside a hog pen located a short distance to the rear of the house in which the party was held. There is direct evidence that an assault was committed by appellant, with direct evidence to the contrary, which naturally produced a highly controversial issue and brought into focus circumstances which otherwise may have been unimportant. Among the circumstances relating to the credibility of the witnesses was the emotional reaction of those testifying as

eye-witnesses, which included a young lady whose first name is Arbutus, who is also the sister of the prosecutrix.

Emma Cash, a witness in behalf of appellant, testified upon direct, cross and re-direct examination that she and her date were sitting on the back porch of the house when the alleged attack is said to have taken place, and thereby had the opportunity to observe the general conduct of the guests, inclusive of appellant and prosecutrix, before and after. The witness stated she heard no outcry from the prosecutrix nor anything out of the ordinary, but after the alleged occurrence she started to go to the barn to find Arbutus, and was called back by her "boy friend."

Immediately after the re-direct examination the trial Judge questioned this witness at length and in detail. In the course of this examination the following questions and answers were developed:

"The Court: Your boy friend called you back and wouldn't let you go to the barn? A. Yes, sir.

"The Court: Why did you want to go to the barn? A. They said they were crying and I wanted to know what it was about.

"The Court: Said what? A. Said Arbutus was crying and I wanted to know what it was about.

"The Court: Did your boy friend go down to the barn? A. No, sir.

"The Court: Did you see Arbutus down in the direction of the barn? A. I saw her in the yard."

Immediately after the trial Judge concluded this part of his questioning the Solicitor again cross-examined the witness on the point of Arbutus crying, with the following developments, quoted from the transcript:

"Q. I didn't catch the first of it. You said Arbutus was crying? A. Yes, sir.

"Q. And you went out to the car to find out what she was crying about? A. No, sir. In the back yard.

"The Court: Was that after you had been to her car? A. Yes, sir.

"The Court: About how long after you had been to her car? A. Oh, about two minutes, maybe three. Went straight to the back porch, and then went back.

"Re-direct Examination By Mr. Cline:

"Q. Mrs. Cash, did you see Arbutus crying, or just somebody told you she was? A. Just said she was crying. I didn't go down there.

"Mr. Cline: I ask that that be stricken, Your Honor.

"The Court: All right, Strike that from the record. It would be hearsay, gentlemen of the jury. Disregard the answers based on information which someone gave her. It does not come within the rule. Disregard it from your consideration.

"There being no further questions, the witness was excused and left the stand.

"The Court: Bring that witness back here.

"Mrs. Emma Cash recalled:

"The Court: When did you first know or learn of this difficulty between Lillie Sue and Eugene? A. Well—

"The Court: That night, the next day, the next month, yesterday, or when did you first learn there had been a difficulty between Lillie Sue and Gene Vickers? A. That night.

"The Court: That night? A. Yes, sir.

"The Court: Before you left, before or after you left the party? A. After.

"The Court: After? A. Yes, sir.

"The Court: Where were you when you got that information? A. Home."

It is observed that the trial Judge, in his examination, elicited hearsay evidence as to the emotional reaction of one of the key witnesses for the State, to wit, that Arbutus was crying. The Solicitor expanded this incompetent evidence. Counsel for appellant, following one question to the witness, requested the striking of the testimony, which request was granted. The prejudice or harm, however, had already been created when the trial Judge first developed the incompetent evidence without at that time,

upon his own volition, ruling the evidence inadmissible, with proper instructions to the jury. It would be practically impossible to erase this testimony from the minds of the jurors such that it would not be a silent factor in their deliberations. Counsel did not object to the questions of the trial Judge, and answers received, and their reluctance to do so is understandable, especially since the reception of evidence through the questions of the presiding Judge could be assumed to constitute a tacit ruling as to its admissibility.

The leading case in this State is *State v. Furtick,* 147 S. C. 82, 144 S. E. 839, 840, 84 A. L. R. 1164, from which we quote copiously since the cited case relates not only to the point discussed but also to the next alleged error:

"Very properly the presiding judge is vested with a wide discretion in the progress of the trial, the eliciting of the truth of the issue; he is not simply the 'moderator of a town meeting,' but there are limits to that discretion. The power of the judge and his duty are thus clearly expressed in the case of *State v. Keehn,* 85 Kan. 765, 118 P. 851:

" 'The purpose of a trial in a criminal case is to ascertain the truth of the matters charged against the defendant, and it is a part of the business of the trial judge to see that this end is attained. He is a vital and integral factor in the discovery and elucidation of the facts, and, whenever in his judgment the attorneys are not accomplishing the full development of the truth, it is not only his right, but it is his duty, to examine and cross-examine the witnesses.'

"His limitations are thus expressed in the case of *Hart v. State,* 14 Ga. App. 364, 80 S. E. 909, as condensed in note L. R. A. 1916A, 1192, which contains an exhaustive treatment of the subject:

" 'While great caution should be used in its exercise, the trial judge has the right, in his discretion, to question the witnesses during the trial, in order to elicit the truth, and this discretion will not be controlled except where it appears that the manner in which the judge exercised his right tended unduly to impress the jury with the importance of

the testimony elicited, or would be likely to lead the jury to suppose that the judge was of the opinion that one party rather than the other should prevail in the case.'

"We reluctantly conclude that the cross-examination was not intended to elicit any fact directly connected with the alleged offense; that it was argumentative in effect, at least very strongly suggestive of a line of argument which the solicitor might take; and that it tended to discredit the defense of alibi relied upon by the defendants.

"In view of the well-known fact of the great influence of the presiding judge upon the minds of a jury, who are quick to seize upon any intimation by word or gesture from him, it is better to leave the examination of witnesses to those charged with that duty, in the absence of a plain omission to elicit evidence for or against a defendant. See an interesting discussion of the subject in the case of *Adler v. U. S.*, 5 Cir., 182 F. 464."

Although *State v. Furtick, supra,* is not cited in *State v. Martin,* 216 S. C. 129, 57 S. E. (2d) 55, 56, its principle is reaffirmed, which opinion contains the following statement:

"It is usually better for the trial Judge to refrain from cross-examining witnesses and, always, from making any remark which may affect the weight to be given the testimony of a witness by the jury."

The next asserted error occurred when the trial Judge ordered the witness to be brought back to the witness chair for further questioning. The several questions propounded by the lower Court were based upon the difficulty which is the factual center of the entire case. When the trial Judge employed the unqualified words "this difficulty" in his primary question, the jury could well have received the definite impression that the Judge was of the opinion there had been at least some "difficulty" or indecorous behavior on the part of appellant. An impression, if so produced, would lend great credibility to the State's witnesses and to the alleged attack upon which the prosecution was based. Again, the testimony

of this witness in reference to anything vexatious occurring between the prosecutrix and the appellant was pure hearsay.

It is with reluctance we sustain the exception charging error as discussed above for we recognize that the trial Judge, who is most able and conscientious, did not intend to influence the jury in any degree or invade the province of jury and counsel.

During the cross-examination of the prosecutrix, appellant's counsel sought to obtain from her the results of the medical examination following the alleged assault. The State's objection to this portion of the attempted cross-examination was sustained by the lower Court, and properly so for several reasons, among them being (1) that such evidence from the prosecutrix would be hearsay; (2) this witness was not competent to give evidence as to the result of a medical examination; and (3) the doctor who performed the examination was equally available to both State and appellant. The exception charging error for refusal to permit this cross-examination is without merit.

Appellant requested an instruction to the jury to the effect that the failure or refusal of the State to call, or have testify, the examining physician raised an inference that this testimony would have been unfavorable to its contention. Again, it may be pointed out that this doctor was equally available to the defense and the same inference could be raised against appellant for his unexplained failure to present the doctor as a witness.

The exception alleging failure of the presiding Judge to direct a verdict of not guilty is also found to be without merit. The evidence, as already pointed out, was highly controversial and under no circumstances could it be said the trial Judge should have directed a verdict in behalf of appellant.

Reversed and remanded for a new trial for the reasons contained in this opinion.

TAYLOR and LEGGE, JJ., concur.

STUKES and OXNER, JJ., concur in part and dissent in part.

OXNER, Justice (concurring and dissenting).

I am in full accord with the disposition made of the last three questions discussed, but disagree with the decision of the first question. I would overrule all exceptions and affirm the judgment of conviction.

It is held in the leading opinion that the examination by the trial Judge of the witness Mrs. Emma Cash constitutes reversible error because (1) he elicited hearsay testimony, and (2) he exceeded the limitations imposed upon a trial Judge and asked questions calculated to influence the jury against appellant.

Neither in the exception relating to this question nor in appellant's brief do I find any complaint that there was prejudicial error in admitting hearsay testimony. Appellant's contention is, quoting from his exception, that "the Presiding Judge invaded the province of the Solicitor, and, by this (his) questions and his recalling of the witness to the stand after she had been dismissed, he accentuated the testimony elicited by the Court and cause (caused) undue emphasis to be laid thereupon." But even if the question of hearsay testimony were properly before us, there are two reasons why it should not be sustained:

(1) As soon as the objectionable nature of this testimony was brought to the attention of the trial Judge, he struck it out and instructed the jury to disregard it. It is suggested that it was impossible to erase this testimony from the minds of the jury. But "if appellant's counsel felt aggrieved, or that the rulings of the Court were inadequate to protect the rights of the defendant, then a motion for a mistrial should have been made." *State v. Warren,* 207 S. C. 126, 35 S. E. (2d) 38, 41. Also, see *State v. Anderson,* 181 S. C. 527, 188 S. E. 186.

(2) Several witnesses testified without objection that Arbutus, the sister of the prosecuting witness, was crying.

Indeed, that fact seems to be practically undisputed. On direct examination, Miss Lillian Stephens, a witness for appellant, testified as follows:

"Q. Now, after they got back into the yard what happened? A. Arbutus came around the house snubbing.

"Q. You mean snubbing, she was crying? A. Putting on.

"Q. Had she seen Lillie Sue at that time? A. No, sir.

"Q. Now then what did Arbutus do at that time? A. She met Lillie Sue and Gene.

"Q. Did you hear a conversation between Lillie Sue and Arbutus in the presence of Gene? A. Yes, sir.

"Q. What if anything did Lillie Sue say? What did— A. Lillie Sue said, 'Why don't you shut your damn mouth. There ain't nothing wrong, and he ain't bothered me.'

"Q. What did they do after that? Where did they go then? A. They went back around the house and left."

Turning now to the question of whether, apart from the matter of eliciting hearsay testimony, the examination was improper, the duty and limitations of a trial Judge in this respect are stated by Mr. Justice Hydrick in *State v. Anderson*, 85 S. C. 229, 67 S. E. 237, 238, as follows:

"A grave responsibility rests upon a trial judge. It is his duty to see to it that justice be done in every case, if it can be done according to law; and, if he thinks that the attorney for either party, either from inadvertence or any other cause, has failed to ask the witnesses the questions necessary and proper to bring out all the testimony which tends to ascertain the truth of the matter under investigation, we can see no legal objection to his propounding such questions; but, of course, he should do so in a fair and impartial manner, and should not by the form or manner of his questions express or indicate to the jury his opinion as to the facts of the case, or as to the weight or sufficiency of the evidence."

The subject is exhaustively annotated in 84 A. L. R., beginning on page 1172, where a number of South Carolina cases are reviewed.

I do not think the trial Judge in the instant case transcended the limitations stated in the foregoing rule. His examination of the witness did not indicate to the jury any opinion as to the defendant's guilt or as to the weight or sufficiency of the evidence. He was merely seeking to elicit information relevant to the decision of the issue on trial, which he evidently thought had not been sufficiently brought out by counsel.

In the following cases it was held that the Court's examination did not constitute prejudicial error, although in each of them the trial Judge went much farther than did the Judge in the instant case: *State v. Atkinson,* 33 S. C. 100, 11 S. E. 693; *State v. Jackson,* 87 S. C. 407, 69 S. E. 883; *State v. Hyde,* 90 S. C. 296, 73 S. E. 180; *State v. Mitchum,* 150 S. C. 341, 148 S. E. 184.

Finally, it is said that the trial Judge by the use of the word "difficulty" in several of his questions might have conveyed an impression to the jury that he was of the opinion that there had been at least some difficulty or indecorous behavior on the part of appellant. While the word used was not an apt one, it seems to me that the majority opinion places entirely too strained a construction upon the language used.

STUKES, J., concurs.