12366

THE STATE v. FURTICK *ET AL.*

(144 S. E., 839)

November, 1926.

*Messrs. J. C. Hiott* and *A. W. Holman,* for appellants,

*Solicitor A. J. Hydrick,* for respondent.

January 30, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

The defendants were convicted of violating the Prohibition Law, manufacturing intoxicating liquor, a joint enterprise.

After the cross examination of one of the defendants by the Solicitor had been concluded, his Honor, the presiding Judge, participated and elicited from him the facts that he was a young man, about 23, running a two-horse farm with his mother; that he and his father each owned an automobile; and that he was engaged in no

other business. The information thus elicited had no direct bearing upon the facts of the case, and naturally presented to the jury the possible inference that an income sufficient to maintain himself in such circumstances must have been derived from the unlawful occupation with which he was charged.

Very properly the presiding Judge is vested with a ■ wide discretion in the progress of the trial, the eliciting of the truth of the issue; he is not simply the "moderator of a town meeting," but there are limits to that discretion. The power of the Judge and his duty are thus clearly expressed in the case of *State v. Keehn*, 85 Kan., 765; 118 P., 851:

"The purpose of a trial in a criminal case is to ascertain the truth of the matters charged against the defendant, and it is a part of the business of the trial Judge to see that this end is attained. He is a vital and integral factor in the discovery and elucidation of the facts, and, whenever in his judgment the attorneys are not accomplishing the full development of the truth, it is not only his right, but it is his duty, to examine and cross examine the witnesses."

His limitations are thus expressed in the case of *Hart v. State,* 14 Ga. App., 364; 80 S. E., 909, as condensed in note L. R. A., 1916-A, 1192, which contains an exhaustive treatment of the subject:

"While great caution should be used in its exercise, the trial Judge has the right, in his discretion, to question the witnesses during the trial, in order to elicit the truth, and this discretion will not be controlled except where it appears that the manner in which the Judge exercised his right tended unduly to impress the jury with the importance of the testimony elicited, or would be likely to lead the jury to suppose that the Judge was of the opinion that one party rather than the other should prevail in the case."

We reluctantly conclude that the cross examination was not intended to elicit any fact directly connected with the alleged offense; that it was argumentative in effect, at least

very strongly suggestive of a line of argument which the solicitor might take; and that it tended to discredit the defense of alibi relied upon by the defendants.

In view of the well-known fact of the great influence of the presiding Judge upon the minds of a jury, who are quick to seize upon any intimation by word or gesture from him, it is better to leave the examination of witnesses to those charged with that duty, in the absence of a plain omission to elicit evidence for or against a defendant. See an interesting discussion of the subject in the case of *Adler v. U. S.* (C. C. A.), 182 F., 464.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE BLEASE concur.

MR. JUSTICE STABLER (dissenting): I agree with the general propositions of law stated by Mr. Justice Cothran in his opinion, but I dissent from his conclusion that the judgment in this case should be reversed.

The defendants were tried on the charge of manufacturing intoxicating liquors; they relied upon the defense of alibi. As stated in the leading opinion, after one of the defendants had been cross examined by the solicitor, the trial Judge asked him a few questions. The information elicited by these questions was that he was about 23 years old, that he ran a two-horse farm for his mother, and that he and his father each owned a Ford automobile. The learned justice concludes that "the information thus elicited had no direct bearing upon the facts of the case, and naturally presented to the jury the possible inference that an income insufficient to maintain himself in such circumstances must have been derived from the unlawful occupation with which he was charged," and accordingly decrees a reversal of the judgment below.

I think that the possibility of such an inference by the

jury from the facts thus elicited is too remote to justify such a conclusion. It may be that, as such information was not absolutely necessary to the development of the truth of the issue, it would have been better had the trial Judge not questioned the defendant along the lines indicated; but I am satisfied, when all the evidence in the case is considered, that the examination by the trial Judge was in no way harmful or prejudicial to the defendants.

The record discloses that an issue of fact, as to the guilt of the defendants, was sharply made by the evidence. The testimony of W. B. Hildebrand, the principal witness for the State, was positive and to the point; and no effort was made by the defense to show that he was unworthy of belief. He testified that on November 13, 1926, he located a still in the northwestern part of Calhoun County; that he secreted himself near by, and saw the defendants, with a negro boy, at the still, doing certain preliminary work—gathering wood and putting beer in the still—preparatory for the running of a charge of whisky; that it was open daylight, about 5 o'clock in the afternoon, and that he was near enough to recognize the two defendants, whom he had known all his life; that he was absolutely certain that they were the men at the still, and that he could not be mistaken about it; and that when they fled, he pursued them, but they outran him and got away. He was absolutely positive in his identification of the defendants.

To establish their defense of alibi, the defendants put on the stand several witnesses, who testified that they saw the defendants at New Brookland, near the City of Columbia, on November 13, 1926, about 5 o'clock in the afternoon, at the very time that the State claimed the raid was made upon the still in Calhoun County. Lucas, the man with whom the defendants claimed to have been, testified that he took them in his Ford touring car, on the afternoon named, to Columbia; and that they did not get back until after dark.

After this testimony was in, one of the defendants, Furtick, testified that he and the other defendant, Hoffman,

went with Lucas to Columbia, on the afternoon named, and were with him as stated by Lucas. After the Solicitor had cross examined him, the Court then asked him the several questions and elicited the information held to be harmful and prejudicial.

In this day and time, when a large per cent. of our young men of small means own automobiles—a fact generally known— it is difficult to understand how the disclosure that the defendant was one of that number was prejudicial, as such fact did not necessarily imply that he was engaged in the unlawful and nefarious business of manufacturing and handling liquor in order to be able to purchase and operate a car. Such a conclusion is neither logical nor tenable. Further, the testimony elicited showed that the defendant was a thrifty young man, running a two-horse farm for his mother, and, if significant at all, was more in his favor than against him, as it tended to establish the fact that he was engaged in a legitimate business which could well support a car. The rule is that when a question asked is irrelevant, or otherwise objectionable, if the answer thereto is favorable to the defendant, he will not be heard to complain.

We may reasonably assume that the jury were intelligent men; that they had no special desire to see these young white men convicted on the charge of manufacturing liquor; that they knew the witnesses and gave such weight to the testimony adduced, for and against the defendants, as they thought right and proper; and it is a mere assumption, not supported by good reasons, to say that the information elicited by the trial Judge was the controlling factor that determined and fixed in the minds of the jury the guilt of the defendants, as reflected by their verdict, rather than the positive testimony adduced by the State, which, if believed, was conclusive of their guilt.

Furthermore, as stated in the case of *Hart v. State,* 14 Ga. App., 364; 80 S. E., 909, cited in L. R. A., 1916-A, 1192, "the error at all times to be guarded against," in the examination of a witness by the Court, "is the conveyance

of even the slightest intimation of judicial·opinion upon the facts in proof or to be proved." Unless one is disposed to be hypercritical, he will find absolutely nothing in the questions asked by ·the presiding Judge that indicated in the least degree his opinion as to the merits of the case. See the following South Carolina cases in which examination of witnesses by the presiding Judge was sustained on appeal, although in at least some of them the position of the appellants was stronger than that of the appellants in the present case: *State v. Atkinson,* 33 S. C., 100; 11 S. E., 693. *Wilson v. Railway Co.,* 52 S. C., 537; 30 S. E., 406. *State v. Ballew,* 83 S. C., 82; 63 S. E., 688; 64 S. E., 1019; 18 Ann. Cas., 569. *State v. Jackson,* 87 S. C., 407; 69 S. E., 883.

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.

Mr. Justice Carter concurs.