18826

C. O. WILLIAMS and M. D. ROBINSON, d/b/a Ocean View Motel, Respondents, v. SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY and Mack A. HAMILTON, JR., of which South Carolina Farm Bureau Mutual Insurance Company is, Appellant.

(163 S. E. (2d) 212)

*Messrs. McCaskill & Thompson,* of Conway, and *Wein-berg & Weinberg,* of Sumter, and *D. Glenn Yarborough,* of Lancaster, *for Appellant,*

*Messrs. Gregory & Gregory,* of Lancaster, *for Respondents,*

September 11, 1968.

BUSSEY, Justice.

In this action the plaintiffs, Williams and Robinson, recovered a verdict in the Court of Common Pleas for Lancaster County, on a fire insurance policy issued by the defendant, South Carolina Farm Bureau Mutual Insurance Company, which, for brevity, will be referred to simply as the company. The appeal is from an order of the trial judge denying a motion for judgment *non obstante veredicto* and a motion for a new trial.

The plaintiffs, Williams and Robinson, are residents of Lancaster County and were the owners, as tenants in common, of a twelve unit frame motel building located in the Town of Cherry Grove Beach in Horry County, South Carolina, which was known by the name of "Ocean View Motel." Although in the caption of the case the names of the plaintiffs are followed by the language "d/b/a Ocean View Motel", there is no allegation in the complaint, or evidence, to the effect that the plaintiffs were in fact doing business as Ocean View Motel.

During the beach season of 1966, the motel property was leased by the plaintiffs to one Mack A. Hamilton, Jr., the lease containing an option to the lessee to purchase the

property, which option, however, the lessee was not able to exercise. In November 1966, plaintiffs executed and delivered to said Hamilton another lease and option to purchase, the term thereof to run from April 15, 1967 to November 15, 1967, but Hamilton was allowed to take possession prior to commencement of the term of his lease for the purpose of proceeding with certain painting and repairs.

Although the lease was signed by both plaintiffs, Hamilton's dealings were with Williams, who, on November 30, 1966, wrote Hamilton to the effect that they did not have any insurance on the motel property and requesting Hamilton to endeavor to obtain insurance thereon. The policy sued on was issued December 29, 1966, effective December 12, 1966, upon an application signed by Hamilton on December 12, 1966, and taken by an agent of the company in Horry County, a Mr. Allen, who, inferentially, was a relatively new and inexperienced agent. Both the application and the policy showed the insured's name as "Ocean View Motel c/o Mack A. Hamilton, Jr., Route 4, Conway, South Carolina". Both the policy and the application show "Charlie Williams, Lancaster, South Carolina" as holding a mortgage thereon, rather than being a part owner thereof. The name of the plaintiff Robinson does not appear either in the application or the policy.

On February 14, 1967 the motel property and its contents were totally destroyed by fire. The policy covered the building in the amount of $45,000.00, and contents in the amount of $10,000.00.

The complaint alleged, *inter alia,* that the company through its agent Allen, who solicited and wrote the policy, had knowledge of the lease and option contract and agreement between plaintiffs and Hamilton, and thereby waived any defect as to the names as stated in said policy. Hamilton was named as a defendant in the action, the complaint alleging that he had an interest in the policy which was in excess of the interest of the plaintiffs, but no relief was sought against him. Recovery against the company was

sought for the benefit of plaintiffs and Hamilton in the amount of $55,000.00. The company interposed a general denial and asserted the further defense that the "policy issued by this answering defendant was issued upon reliance of misrepresentations of facts as to the ownership of said property and the insurable interest of any person."

Hamilton filed an answer in which he admitted the allegations of the complaint and asserted that the company, through its agent, had solicited the policy and had full knowledge as to the true interests of all parties with respect to the insured property. Hamilton also served a cross-complaint against the company asserting an interest in the policy; that he, as well as the plaintiffs, was entitled to protection under the policy, and praying that he along with the plaintiffs have judgment against the company for the face amount of the policy.

At the conclusion of plaintiffs' testimony the company moved for a nonsuit as to the plaintiffs, which was refused. The company then moved for a nonsuit as to the cross-complaint of Hamilton, which motion the court promptly granted, on the ground that he had no insurable interest, and, as far as the record shows, without any argument, discussion or objection by counsel for Hamilton. From such ruling Hamilton has not appealed and he was from that moment on no longer a real party in the case as plaintiffs had sought no relief against him. The record shows, however, that his counsel continued in the trial, apparently for the sole purpose of being of assistance to the plaintiffs.

The company raises a number of questions on appeal and we shall first consider whether it was entitled to a directed verdict or judgment *non obstante veredicto* as contended. Briefly summarized, it is the company's contention that the evidence is susceptible of no other reasonable inference than that plaintiffs were not disclosed as the owners of the insured property or as the persons intended to be insured at the time Hamilton signed the application, and that Hamilton made false representations as to the ownership of the

insured property, the identity of the true owners, and their interests in the insured property, all of which representations were relied upon by the company in issuing the policy.

In considering this contention, it is elementary that the evidence and all the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiffs. Neither the application nor the policy contained clear and accurate information as to the interests of the several parties in the insured property. There is apparently no such legal entity as "Ocean View Motel" and consequently neither the policy nor the application contained any named insured. Such being the case, a question arises on the face of the application and policy as to just whom the company intended to insure.

In *Cobb & Seal Shoe Store v. Aetna Ins. Co.,* 78 S. C. 388, 58 S. E. 1099, it is said,

"A contract is good between the parties, no matter how incorrect the names used in the paper may be, if it appears [that] they were intended as the names of the parties to be bound by the contract or to receive its benefits." Cf. *Sumter Tobacco Warehouse Co. v. Phoenix Ins. Co.,* 76 S. C. 76, 56 S. E. 654, 10 L. R. A., N. S. 736.

In 29 Am. Jur. 623, Insurance, Sec. 240, it is said that it is not essential to the effectiveness of a contract that the name of the insured should appear therein, and

"* * * that in view of the common law principle that the office and purpose of a name is only that of identification, if it is clear that an insurance company is not misled as to the identity of the applicant, there seems to be no reason why it should be allowed to avoid the risk on such account. Accordingly, an insurance policy may be issued to one in a name adopted by him."

Since the case must be remanded for a new trial, for reasons hereinafter mentioned, we refrain from a full discussion of the evidence. It is sufficient to say, we think, that the evidence was in sharp conflict as to

whether the company, through its agent, had full knowledge at the time it accepted the application and issued the policy of the true status of the property with respect to its title and the several interests of the various parties therein. The evidence, we think, raised jury issues as to whether the company intended to issue the policy either to or for the benefit of the plaintiffs, and also as to whether Hamilton made any false representations which would vitiate the policy. Such being the case, we find no error in the refusal of the trial judge to grant a directed verdict in favor of the company.

Hamilton did not testify as a witness for the plaintiffs in the course of the presentation of their case. At the completion of the defense testimony, Hamilton was called as a reply witness by his counsel of record (who, as above mentioned, apparently remained in the trial for the sole purpose of assisting plaintiffs), and testified at length. Hamilton was then cross examined by counsel for the company, following which counsel for plaintiffs then undertook to cross examine Hamilton, which cross examination the judge permitted over objection of counsel for the company. His Honor was, we think, clearly in error in permitting such cross examination. In doing so, His Honor reasoned that Hamilton was still in the case as a defendant. Hamilton was made a party defendant not for the purpose of relief against him, but solely to protect any interest he might have in the policy. When it was ruled that he had no insurable interest, and a nonsuit was granted as to his cross-complaint, Hamilton was effectively, if not technically, out of the case as a party. Although called as a witness by his own counsel of record, he was, in effect, and actually, called as a witness in behalf of the plaintiffs, gave testimony in their behalf, and permitting his cross examination by counsel for plaintiffs was clearly prejudicial error. Immediately following the erroneously permitted cross examination the following occurred:

"The Court: Mr. Hamilton, I show you this application and show you over on the right side, the upper right hand

corner a section, the first line of which says date of last fire loss and a number of other questions, would you look at that section just a minute. There are a number of questions there, are there not?

"The Witness: Yes, sir.

"The Court: And I notice the two letters with a slash between them—n slash a. (N/A)

"The Witness: Yes, sir.

"The Court: Did you give the reply to any question with the answer n slash a? Did you authorize or answer any question with the letters n slash a?

"The Witness: I hadn't had a fire loss.

"The Court: Well, I want you to answer my question. Did you answer any question with n slash a? Was that your reply? What did n slash a mean?

"The Witness: I don't know.

"The Court: Well, then how could you have given that reply if you don't know what it means?"

Prior to the foregoing, considerable evidence had been adduced dealing with the questions asked and the answers given when the application was being prepared for Hamilton's signature. Under the circumstances, the questions and/or comments by the judge could have well conveyed to the jury the impression that the judge was of the view that at least some of the contents of the application were not in accord with the answers actually given by Hamilton at the time. The trial judge, of course, has the right, in his discretion, and in a proper manner, to question witnesses during a trial, in order to elicit the truth. This discretion will not be controlled except where it appears that the manner in which the judge exercised the right tended to unduly impress the jury with the importance of the testimony elicited, or would be likely to lead the jury to suppose that the judge was of the opinion that one party rather than the other was correct upon a particular issue of fact.

As was said in the case of *State v. Furtick*, 147 S. C. 82, 144 S. E. 839, 84 A. L. R. 1164,

"In view of the well-known fact of the great influence of the presiding judge upon the minds of a jury, who are quick to seize upon any intimation by word or gesture from him, it is better to leave the examination of witnesses to those charged with that duty, in the absence of a plain omission to elicit evidence, for or against a defendant."

If a trial judge in the exercise of his discretion feels called upon, in the interest of justice, to question witnesses to elicit the truth, he should be cautious to see that such questions are propounded in a fair and impartial manner, and should not express or indicate to the jury the judge's opinion as to the facts of the case or the weight or sufficiency of the evidence. *State v. Chasteen,* 228 S. C. 88, 88 S. E. (2d) 880.

The record reflects that the following occurred in the course of argument by plaintiffs' counsel to the jury,

"(Later in Mr. Gregory's argument Mr. Weinberg objects.)

"Mr. Weinberg: * * * the Insurance Company owns the skyscrapers, they have all the finances and they take money from people like M. D. Robinson and Charlie Williams. Your Honor, please, we submit that argument is highly inflammatory, highly prejudicial and should cause the court to order a mistrial and we so move.

"The Court: We note your objection."

The argument of counsel was not stenographically recorded and neither the record nor the order of the trial judge disposing of the post trial motions throws any light upon the trial judge's understanding or recollection of what precisely was said by plaintiffs' counsel in argument. In his brief counsel for plaintiffs denies that his argument was precisely as stated by Mr. Weinberg, and intimates that some of the words and phrases used by Mr. Weinberg were used out of context. He, however, does not specifically deny the substance of the argument attributed to him by Mr. Weinberg and rather attempts to justify it. If his argument was substantially such as attributed to him by Mr. Wein-

berg, it was improper and, under the circumstances, the court should have reprimanded counsel and instructed the jury to disregard such improper argument. *Hubbard v. Rowe,* 192 S. C. 12, 5 S. E. (2d) 187.

Certain exceptions impute error with respect to the charge of the trial judge. We do not think that a full discussion of these exceptions or an analysis of the charge would prove particularly helpful on a new trial. Our failure to discuss such should not be construed, however, as evincing complete approval of the charge. To the contrary, while most of the charge was fundamentally correct, we do not think that it pointed out nearly so clearly, or fully, as it might have the precise issues being submitted to the jury for determination and the principles of law applicable thereto. In fairness to the trial judge, it should be said that if he received any particular help from counsel, (by way of requests to charge or otherwise), in formulating a proper and full charge in this quite unusual case, the record does not reflect it.

For the reasons hereinabove set forth, the judgment of the lower court is reversed and the cause remanded for a new trial.

Reversed and remanded.

Moss, C. J., and Lewis, Brailsford, and Littlejohn, JJ., concur.