18939

C. O. WILLIAMS and M. D. Robinson d/b/a Ocean View Motel, Respondents, v. SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

(168 S. E. (2d) 794)

*Messrs. McCaskill & Thompson,* of Conway, *for Appellant,*

*Messrs. Gregory & Gregory,* of Lancaster, *for Respondents,*

July 10, 1969.

FRANCIS B. NICHOLSON, Acting Associate Justice.

This case has previously been reviewed by this court and the prior opinion, reported at 251 S. C. 464, 163 S. E. (2d) 212 (September 11, 1968), should be consulted for a full statement of the issues made by the pleadings and the basic facts.

By the prior opinion this court reversed a judgment in favor of plaintiffs and required a new trial because of procedural errors. The case has been tried again, resulting another time in a jury verdict for the plaintiffs. By this appeal the defendant contends that a verdict should have been directed in its favor and alleges that interest should not have been allowed as a matter of law. However, we did deal, upon the previous appeal, with the contention of the company that, upon the facts then presented, it was entitled to a directed verdict or judgment *non obstante veredicto* and commented as follows regarding the legal question created by these relatively unusual facts whereby the insured upon the policy issued by the company was "Ocean View Motel, c/o Mack A. Hamilton, Jr., Route 4, Conway, South Carolina" when no such legal entity as the Ocean View Motel existed:

"There is apparently no such legal entity as 'Ocean View Motel' and consequently neither the policy nor the application contained any named insured. Such being the case, a question arises on the face of the application and policy as to just whom the company intended to insure."

\* \* \*

"It is sufficient to say, we think, that the evidence was in sharp conflict as to whether the company, through its agent, had full knowledge at the time it accepted the application and issued the policy of the true status of the property with respect to its title and the several interests of the various parties therein. The evidence, we think, raised jury issues as to whether the company intended to issue the policy either to or for the benefit of the plaintiffs, and also as to whether Hamilton made any false representations which would vitiate the policy."

Upon retrial, counsel for both parties and the distinguished trial judge treated the prior opinion of this court as a mandate to ascertain the intention of the parties as to who should be the insured under this policy. The question

of intention was submitted to the jury by an able charge to which there is no exception.

The company contends, however, that the evidence did not support an inference of intention to insure the plaintiffs sufficient to constitute a jury issue and that it was entitled to a directed verdict or to judgment *non obstante veredicto*. The contention if the company is, thus, that the trial court's mandate to ascertain the intent of the parties should have been resolved in its favor as a matter of law, strenuously urging that the evidence is susceptible only of the inference that the intention was for Hamilton (the lessee and holder of purchase option and applicant for the insurance policy) to be the insured.

The case was retried upon essentially the same evidence as was presented during the first trial (for instance, the company's agent, Allen had died in the interim and his prior testimony was submitted *in toto*) and the only new evidence of significance which the company contends bears upon the proposition it asserts was that of Hamilton, upon cross-examination by counsel for the company, as follows:

"Q. And you anticipated that sooner or later if your plans worked out that you would be the owner of the property and Mr. Williams would have a mortgage on it, isn't that right?

"A. That's right.

"Q. So when Mr. Williams told you to take out insurance and make him the mortgagee, that was what you were trying to accomplish, isn't that right?

"(Interruption by counsel.)

\* \* \*

"Q. And that's what you meant for the insurance company to do and instructed them?

"A. That's right.

"Q. And that was your intention?

"A. Yes.

"Q. And that is what the insurance did, isn't it?

"A. Yes, sir."

The company thus contends that Hamilton's intention was manifest to denominate himself as insured and that the minds of himself and the agent met in that regard. (Yet, and anomalously, the cross-complaint of Hamilton in the original action by which he sought recovery of the proceeds of the policy for himself was, in the first trial, dismissed upon the company's motion for nonsuit upon the ground that Hamilton had no insurable interest.)

The company concedes, however, that a question of fact arose and was resolved by the jury in favor of plaintiffs as to whether it, through its agent, knew at the time it accepted the application and issued the policy that plaintiffs were the owners of the property (this information coming to the agent from a prior examination of the lease and option agreement between plaintiffs and Hamilton).

We cannot conclude that the testimony of Hamilton, as quoted, was sufficient to override the ambiguities inherent in the company's knowledge of this basic fact of ownership and in its act of issuing policy in the name of the "Ocean View Motel." The fact of issuance of the policy in that name in itself stands in contradiction to the import of Hamilton's testimony.

The evidence here, as previously, created a jury issue as to whether the policy, representing the agreement of the parties, was intended to insure the plaintiffs, and we consequently find no error in the refusal of the trial court to grant the company's motion for directed verdict or for judgment *non obstante veredicto.*

The only remaining question relates to the allowance of interest by the trial judge upon the amount of the policy from a date commencing sixty days from the filing of a notice of loss on the day following the fire. The parties had agreed that the question of interest would be determined by the court, but the company contends that plaintiffs should not be entitled to any interest since there was no proof of loss filed, contrary to the requirement of the policy.

The evidence indicates that on the morning following the fire Hamilton, upon instruction to so proceed by the company's agent, went to the company's local office and there signed a "loss report" or notice of loss, and that no other or further forms were furnished him by the company in connection with the loss, although he was interviewed subsequently, prior to litigation, by both one of counsel for the company and by a company adjustor. Implicit in the jury's verdict in favor of plaintiffs is a finding that in his dealings with the company Hamilton was acting on behalf of and as the agent of plaintiffs, and such implication must carry to his filing the notice of loss.

Under the foregoing facts, the trial judge concluded that the plaintiffs, in the light of the provisions of Section 37-166 of the Code of Laws of South Carolina, 1962, had complied sufficiently with any requirements as to proof of loss. The code section reads as follows:

"Proof of loss forms required to be furnished.—When any company under any insurance policy requires a written proof of loss after the notice of such loss has been given by the insured or beneficiary, the company or its representative shall furnish a blank to be used for that purpose. If such forms are not so furnished within twenty days after the receipt of such notice, the claimant shall be deemed to have complied with the requirements of the policy as to proof of loss upon submitting within the time fixed in the policy for filing proofs of loss written proof covering the occurrence, character and extent of the loss for which claim is made."

As held in *American Mutual Fire Ins. Co. v. Green,* 233 S. C. 588, 106 S. E. (2d) 265 (1958), the purpose of the foregoing section is to provide a method by which the insured can file proof of loss when the insurer's form is unavailable. In the instant case the written notice of loss filed with the insurer on the date of the fire covered fully " 'the occurrence, character and extent of the loss' " for which the claim was made, in compliance with the provisions of the

statute. Such being the case, the trial judge's conclusion that the plaintiffs, by virtue of the statutory provision, were deemed to have complied with the requirements of the policy as to proof of loss was correct.

The policy provided, *inter alia*, that the loss would be payable "sixty days after proof of loss" and ascertainment of the amount of the loss. In the instant case, there was from the inception no question as to the amount of the loss and the statutory equivalent of a proof of loss having been filed with the insurer on the date of the fire, it follows that the trial judge correctly held that the plaintiffs were entitled to interest from sixty days after the date of the fire. *Berry v. Va. State Ins. Co.*, 83 S. C. 13, 64 S. E. 859 (1909) ; *Columbia Real Estate & Trust Co. v. Royal Exchange Assurance*, 132 S. C. 427, 128 S. E. 865 (1925).

We find no error and the judgment of the lower court is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.