0165

Danny Lee FLYNN, d/b/a Flynn Used Cars, Respondent, v. NATIONWIDE MUTUAL INSURANCE COMPANY and the Bank of Lancaster, of whom Nationwide Mutual Insurance Company is Appellant. Appeal of NATIONWIDE MUTUAL INSURANCE COMPANY.

(315 S. E. (2d) 817)

Court of Appeals

*John C. Hayes, III*, of *Hayes, Brunson & Gatlin*, Rock Hill, *for appellant.*

*Don S. Rushing*, of *Thomas, Rushing, Goldsmith & Folks*, Lancaster, *for respondent.*

Heard March 19, 1984.

Decided April 30, 1984.

SANDERS, Chief Judge.

Respondent Danny Lee Flynn obtained judgment against appellant Nationwide Mutual Insurance Company for its

failure to pay a claim on a wrecker destroyed by fire. Nationwide's defense at trial was that Flynn intentionally burned the wrecker. After a hearing following entry of judgment, the trial judge ordered Nationwide to pay attorney's fees to Flynn and interest on judgment from the day after the loss until the claim was paid. Nationwide appeals the award of attorney's fees and the amount of interest. We affirm.

I

Section 38-9-320 of the 1976 Code of Laws of South Carolina provides that if an insurer refuses to pay a claim within 90 days after demand and the trial judge finds that such refusal "was without reasonable cause or in bad faith," the insurer shall be liable for reasonable attorney's fees in the amount of one-third the judgment or $2,500, whichever is less.

An insurer is not required to pay attorney's fees in every case won by an insured. *Nelson v. United Fire Insurance Company of New York*, 275 S. C. 92, 267 S. E. (2d) 604 (1980), citing *Madden v. Pilot Life Insurance Company*, 272 S. C. 264, 251 S. E. (2d) 196 (1979). The factual finding of unreasonableness or bad faith is a condition precedent to an award of attorney's fees under this Code section. *Brown v. State Farm Mutual Insurance Company*, 275 S. C. 276, 269 S. E. (2d) 769 (1980). The determination of whether attorney's fees should then be awarded is one in equity, made without the aid of a jury. Thus, we are free to find facts in accordance with our view of the preponderance of the evidence. *Brown; Baker v. Pilot Life Insurance Company*, 268 S. C. 609, 235 S. E. (2d) 300 (1977). This determination should be made based on consideration of relevant evidence adduced at trial of the case which resulted in judgment for the insured, as well as any other competent evidence of the lack of reasonable cause or bad faith of the insurer in refusing to pay the claim. *Coker v. Pilot Life Insurance Company*, 265 S. C. 260, 217 S. E. (2d) 784 (1975).

Upon a review of the record, we find the evidence relevant to this issue may be summarized as follows:

*Evidence of Flynn*

Flynn testified at trial that he is in the business of operating a garage where he provides wrecker service and paints

vehicles, using various chemicals and paint thinners. He testified further that he had been painting a tractor and a truck prior to the accident which destroyed the wrecker and did not change his shoes or clothing before driving it.

Flynn went on to testify that he was driving the wrecker when it was forced off the road by an oncoming car which crossed into his lane of travel, causing the wrecker to crash and catch fire. He further testified that although he was injured when his head struck the wrecker windshield, he got out and flagged down the first passing car and called the police.

A highway patrolman testified Flynn was visibly upset and tried to extinguish the fire. He said he had to take Flynn away from the fire to calm him down. The patrolman further testified he found fresh skid marks apparently leading into Flynn's lane of travel. He said he also found skid marks from the wrecker and observed where it had plowed up the area where it ran off the road and into a ditch, damaging its left front on impact. A fireman also testified Flynn tried to extinguish the fire and was "shook up."

The passing motorist flagged down by Flynn testified he had met a car coming toward him from the direction of the accident "running a little fast" and then came over a hill and saw Flynn at the bottom of the hill. He said his first observation of fire was of that around the hood; none was at the cab or back of the wrecker. He testified further that after returning from taking Flynn to call the police, he heard a loud boom and saw gas spewing up into the air as the wrecker started to burn. This witness also testified he gave Nationwide a recorded statement of his observations. His testimony was corroborated by the testimony of another witness who had been riding with him as a passenger.

The vice-president of the bank which held a lien on the wrecker testified Flynn paid his bills, had good credit and a good reputation for truth, honesty and veracity, and continued to make payments on the wrecker after it was destroyed.

A worker at a body shop who attempted to pull the wrecker from the scene testified he was unable to do so because there was a stump caught under its front bumper.

Flynn admitted he was present when the wrecker caught fire and was the only person who would benefit by payment of the claim, other than the bank.

### Evidence of Nationwide

An investigator employed by Nationwide testified he obtained photographs of the wrecker and samples of burned materials from it five days after it was destroyed.

A chemist testified he ran tests on the samples of burned materials scraped from the wrecker floorboard and detected the presence of flammable liquid petroleum of a "middle range," which would include liquids like "barsol" (sic), charcoal lighter and paint thinner. However, he conceded his tests did not measure the quantity of any such liquids, and liquids such as paint thinner could get on shoes and stay on material for a month. He also conceded he could not say that the gas tank had not burst and spilled gasoline over the wrecker.

Nationwide's attorney submitted his affidavit to the court saying that after a review of the file supplied to him by Nationwide, he had advised the company he felt "very comfortable with proving, by circumstantial evidence, the incendiary origin of the fire and Mr. Flynn's opportunity to set the fire."

We find the preponderance of this evidence supports the award of attorney's fees based on Nationwide's refusal to pay Flynn's claim without reasonable cause.

In our view, the evidence here, both direct and circumstantial, relied on by Nationwide to establish arson, is equally consistent with the proposition that the wrecker was accidently destroyed. A fact cannot be established by circumstances which are perfectly consistent with direct and unimpeached testimony that the fact does not exist. *Williams v. Ford*, 233 S. C. 304, 104 S. E. (2d) 378 (1958).

Furthermore, all this evidence was either known to Nationwide or could have been readily obtained by a reasonable investigation. An insurer has a good faith duty to investigate a claim. *Lord v. State Automobile and Casualty Underwriters, Des Moines, Iowa,* 208 Kan. 227, 491 P. (2d) 917 (1971); *Trimper v. Nationwide Insurance Co.,*540 F. Supp. 1188 (D.S.C. 1982). An insurer's claim of arson based on mere suspicion does not provide a reasonable basis for denial

of coverage so as to warrant exemption from penalty. *See Fireman's Ins. Co. of Newark, N. J. v. Smith,* 83 F. Supp. 668 (W. D. Mo. 1949), *aff'd,* 180 F. (2d) 371 (8th Cir. 1950), *cert. denied,* 339 U. S. 980, 70 S. Ct. 1028, 94 L. Ed. 1384 (1950); *Baghramain v. MFA Mutual Insurance Company,* 315 So. (2d) 849 (La. Ct. App. 1975); cases collected in 6A John Appleman & Jean Appleman, *Insurance Law and Practice,* § 4035 at n. 35.15 (1972).

Nationwide cannot rely here on the very limited advice received from its attorney to escape liability for attorney's fees because the attorney simply based his advice, such as it was, on information supplied to him by the company.

## II

We also hold the trial judge was correct in ordering ■ Nationwide to pay interest on the judgment from the date of loss.

Our Supreme Court has in the past taken various approaches to the computation of interest due on a claim. *See Cave v. Home Ins. Co. of New York,* 57 S. C. 347, 35 S. E. 577 (1900); *Berry v. Virginia State Ins. Co.,* 83 S. C. 13, 64 S. E. 859 (1909); *Columbia Real Estate & Trust Co. v. Royal Exchange Assurance,* 132 S. C. 427, 128 S. E. 865 (1925); *Williams v. South Carolina Farm Bureau Mutual Insurance Company,* 253 S. C. 53, 168 S. E. (2d) 794 (1969).

Nationwide concedes prejudgment interest is allowable in a proper case, but argues that because its policy contains no provision as to when interest should begin to run, it is entitled to an interest free period of at least 60 days from loss in which to investigate the claim. In support of its argument, Nationwide cites Annot. 5 A. L. R. 4th 126 § 9 (1981).

We reject this argument under the facts here. It would ■ ordinarily seem proper to allow an insurer a reasonable period in which to investigate a claim as Nationwide argues. However, once that period is over and the insurer still refuses to pay a claim for which it is liable, in the absence of a policy provision to the contrary, interest should be computed from the date of loss. *See Home Ins. Co. of New York v. Roll,* 187 Ky. 31, 218 S. W. 471 (1920); *Jones v. Protection Mut. Fire Ins. Co. of Cambria County,* 93 F. Supp. 505 (E.D. Pa. 1950), *new trial denied,* 95 F. Supp. 589 (E.D.Pa. 1951), *aff'd,* 192 F.

(2d) 1018 (3rd Cir. 1951) (holding even where policy provides 60-day waiting period, interest should run from date of loss because, by denying all liability, insurer waives right to withhold payment for 60-day period).

For these reasons the order of the trial judge is

Affirmed.

SHAW and BELL, JJ., concur.