731 S.E.2d 902

**BMW OF NORTH AMERICA, LLC, Appellant,**

v.

**COMPLETE AUTO RECON SERVICES, INC., d/b/a C.A.R.S., Inc., and Colony Insurance Company, Defendants, of Whom Colony Insurance Company is Respondent.**

Appellate Case No. 2009-137207.

No. 5012.

Court of Appeals of South Carolina.

Heard April 10, 2012.

Decided Aug. 1, 2012.

---

446

H. Donald Sellers and Christopher B. Major, both of Haynsworth Sinkler Boyd, PA, of Greenville, for Appellant.

Jennifer D. Eubanks, of Gallivan White & Boyd, PA, of Greenville, for Respondent.

LOCKEMY, J.

In this insurance action, BMW of North America, LLC (BMW) appeals the trial court's granting of summary judgment in favor of Colony Insurance Company (Colony). BMW argues the trial court erred in (1) determining its insurance coverage was not triggered by damage to its cars; (2) determining Colony did not act in bad faith in denying BMW's

claim; (3) determining the policy Colony issued to BMW was not illusory; and (4) dismissing its motion to compel as moot. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On May 6, 2006, Colony issued a Garage Insurance Policy (the Policy) to Complete Auto Recon Services, Inc. (CARS), under which CARS was the only named insured. The Policy included both "Liability" and "Garage Keepers" coverage. Under "Liability" the coverage included "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which [the insurance applied] caused by an 'accident' and resulting from 'garage operations' other than the ownership, maintenance or use of covered 'autos' " and "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which [the insurance applied] caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of 'covered autos.' " Within the "Garage Keepers" coverage, the Policy provided for two different types of coverage labeled "Comprehensive" and "Collision." Generally, the "Garage Keepers" coverage provided the insurer would:

> pay all sums the "insured" legally must pay as damages for "loss" to a "customer's auto" or "customer's auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" under:

> a. Comprehensive Coverage
>    From Any cause except:
>    (1) The "customer's auto's" collision with another object; or
>    (2) The "customer's auto's" overturn . . .

> c. Collision Coverage
>    Caused By:
>    (1) The "customer's auto's" collision with another object; or
>    (2) The "customer's auto's" overturn.

The Policy also included an endorsement naming BMW as an additional insured. The endorsement provided in pertinent part, "Under LIABILITY COVERAGE WHO IS AN IN-

SURED is changed to include [BMW], but only for liability arising out of the ownership, maintenance and use of that part of the described premises which is leased to [CARS]." The endorsement did not mention any other types of coverage, nor did the Policy include any further endorsements with respect to BMW.

During this same time period, BMW entered into a service agreement with CARS under which CARS provided washing and maintenance services on a fleet of BMW vehicles used at a BMW test track. On May 3, 2007, one of CARS's employees left the windows to six BMW vehicles (the Vehicles) open during a severe rain storm. As a result, the Vehicles suffered property damage totaling $601,720 and BMW filed a claim for the damage to the Vehicles to Colony. After BMW filed the claim, Colony investigated and declined to make payment in a July 12, 2007 letter. On September 16 and 28, 2007, BMW followed up with two letters requesting Colony to pay its claim, citing reprimands issued to two CARS employees and sufficient notice of the severe storms to protect the vehicles. In October 2007, Colony again reviewed BMW's claim. Subsequently, BMW filed suit against CARS for breach of contract under their service agreement and negligence for failing to secure the windows to the Vehicles.[1] BMW also sued Colony alleging breach of an insurance contract and bad faith refusal to pay an insurance contract. Colony counterclaimed asking the court to enter a declaratory judgment stating it owed no duty to BMW under the policy with regard to the Vehicles.

After some written discovery, BMW served notice of a deposition on Colony's claims adjuster who dealt with the Vehicles. As a result, Colony filed a motion for a protective order against deposing the adjuster and BMW filed a motion to compel. Colony also filed a motion for summary judgment. At the motion hearing, Colony argued BMW's coverage under the Policy was limited to third-party liability coverage. Thus, because CARS, not BMW, was liable for the damage to the cars arising out of CARS's negligence, Colony owed no duty to BMW under the Policy. BMW responded that because they

---

1. On February 24, 2010, a jury verdict was rendered and judgment was entered against CARS in the amount of $216,000 in actual damages resulting from CARS's negligence.

were listed as an additional insured in the Policy and the Policy included comprehensive coverage, Colony owed BMW a duty as to the Vehicles. BMW further argued the Policy was at least ambiguous in what coverage the Policy afforded them; therefore, it should have been interpreted in favor of coverage. Further, BMW argued an interpretation that BMW was only afforded liability coverage under the Policy would render it meaningless as to BMW. BMW explained third-party coverage would be meaningless to them because CARS's employees never interacted with third-parties to whom BMW could become liable. BMW finally argued, even without a breach of the Policy, Colony could still be liable for a bad faith claim.

The trial court granted Colony's motion for summary judgment and as a result found the motions to compel and for a protective order moot. Specifically, the trial court found, based on the Policy's language, BMW was only afforded liability coverage. Further, the trial court found BMW presented no evidence BMW was liable to a third party for the damage to the Vehicles which could trigger its liability coverage. Additionally, the trial court ruled because BMW was not afforded coverage under the Policy as to the Vehicles, there was no breach of the Policy, nor did BMW have a bad faith claim against Colony. This appeal followed.

## STANDARD OF REVIEW

"When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Miller v. Blumenthal Mills, Inc.*, 365 S.C. 204, 219, 616 S.E.2d 722, 729 (Ct.App.2005). "In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party." *Id.* "If triable issues exist, those issues must go to the jury." *Id.*

## LAW/ANALYSIS

### Coverage

BMW argues the trial court erred in finding the Policy did not provide BMW coverage. Specifically, BMW contends the Policy shows CARS was paying premiums for "Compre-

hensive" coverage under the "Garage Keepers" coverage, which is separate and distinct from any liability premiums CARS paid, and BMW was an additional insured to that coverage. BMW further asserts the Policy is ambiguous as to the "Comprehensive" coverage, and the ambiguity must be resolved in favor of coverage. We disagree.[2]

"The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language." *Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003). Where the language of a contract is clear and unambiguous, it alone determines the contract's force and effect. *Id.* "This [c]ourt must give policy language its plain, ordinary, and popular meaning." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999). "Parties to a contract have the right to construct their own contract without interference from courts to rewrite or torture the meaning of the policy to extend coverage." *Schulmeyer*, 353 S.C. at 495, 579 S.E.2d at 134.

Colony argues that although BMW is listed as an "additional insured" in the Policy, the Policy provides only "Liability" and "Garage Keepers" coverage to BMW. Thus, because liability coverage extends to cover an insured's liability to a third party and BMW has not been found liable to a third party, Colony argues the Policy provides no coverage for BMW.

We find the trial court did not err in determining BMW was not afforded coverage under the Policy as to the Vehicles. BMW is not a named insured on the Policy itself. As a result, the Policy as a whole does not initially cover BMW as an insured. However, BMW is added to the Policy by way of an endorsement to the Policy. This endorsement, however,

---

2. Initially, Colony asserts this issue is not preserved for review. We disagree. At the summary judgment hearing, BMW argued the Policy afforded them comprehensive coverage. Additionally, the trial court found, according to its plain language, the Policy only included liability coverage. Therefore, this issue was properly raised to and ruled upon by the trial court. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review.").

which is the only way BMW under the policy could be an insured, provides only liability coverage. Importantly, the endorsement makes no mention of comprehensive coverage. Additionally, the endorsement specifically provides, "The provisions of the Coverage Form apply unless modified by the endorsement." Thus, because "WHO IS AN INSURED" as to the comprehensive coverage was not modified by the endorsement, the original form applies, meaning only CARS, the named insured, is entitled to that coverage. Therefore, according to the plain language of the Policy, BMW is only an insured as to liability.

■ Because BMW is only an insured as to liability coverage under the Policy, for Colony's duty to pay BMW as an insured to be triggered, BMW must have first been liable to some third party. *See Trancik v. USAA Ins. Co.*, 354 S.C. 549, 554, 581 S.E.2d 858, 861 (Ct.App.2003) (stating liability insurance contracts are generally contracts "whereby the insurer ... agrees to pay the insured ... the amount of any damages the insured may become legally liable to pay to a third party"); *see also* Black's Law Dictionary 997 (9th ed.2009) (defining liability as "[t]he quality or state of being legally obligated or accountable; legal responsibility to another"). BMW failed to present any evidence tending to show it was in any way liable to a third party due to the damage caused to the Vehicles. Further, in BMW's response to Colony's request for admissions, BMW admitted no one had filed suit against it regarding damage to the Vehicles. Accordingly, the trial court did not err in determining the Policy did not afford BMW coverage with respect to the Vehicles.

### Bad Faith

■ BMW argues the trial court erred in granting Colony's summary judgment motion as to its bad faith claim. Specifically, BMW asserts it was an additional insured under the Policy and by ignoring BMW's correspondence, refusing to provide explanations as to the denial of coverage, and refusing to acknowledge CARS's liability, Colony acted in bad faith in processing and denying BMW's claim. We disagree.[3]

---

3. Colony argues this issue is not preserved for review because it was never ruled on by the trial court. We disagree. In its order, the trial court ruled Colony did not act in bad faith in denying BMW's claim.

The elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance are: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359, 415 S.E.2d 393, 396–97 (1992). "[A]n insurer acts in bad faith when there is no reasonable basis to support the insurer's decision [for contesting a claim]." *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 645, 594 S.E.2d 455, 462 (2004). However, where an insurer has a reasonable ground for contesting a claim, there is no bad faith. *Id.* Additionally, this good faith obligation includes an insurer's duty to investigate a claim. *Flynn v. Nationwide Mut. Ins. Co.*, 281 S.C. 391, 395, 315 S.E.2d 817, 820 (Ct.App.1984). Importantly, an insured need not prove a breach of an express contractual provision as a prerequisite to bringing a bad faith cause of action. *Tadlock Painting Co. v. Maryland Cas. Co.*, 322 S.C. 498, 504, 473 S.E.2d 52, 55 (1996).

Colony contends that because no coverage existed as to the claim BMW made, Colony could not have acted in bad faith in refusing to pay BMW. We agree. As previously discussed, with respect to the Vehicles, the Policy did not afford BMW coverage for this claim. The Fourth Circuit, in *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485 (4th Cir.2005), while interpreting South Carolina insurance law, determined a similar situation to the present case provided reasonable grounds for the insurer to deny coverage. In *Myrick*, the insured sought to insure three pieces of equipment from loss. *Id.* at 487. Just weeks after the policy became effective, a fire destroyed one of the pieces of equipment the insured sought to have covered under the policy. *Id.* at 488. After the insured made a claim on the destroyed equipment, the insurer correctly determined although the policy at issue did provide property coverage for one machine of the type destroyed, it did not provide such coverage for the specific machine that burned. *Id.* at 494. As a result, the court held that although the parties admitted a contract existed between them, the

insurer's refusal to pay benefits was reasonable because the subject matter of the claim allegedly triggering payment did not actually fall within coverage. *Id.* at 494–95.

■ The present case bears comparison to *Myrick*. Just as destruction of the machine in *Myrick* could never trigger coverage as to the insured because it was not covered in the policy, so too could there never be coverage under the Policy where, as here, BMW did not face any sort of liability to third parties. As a result, just as was the case with the insurer in *Myrick*, we find Colony had reasonable grounds upon which to not only contest, but also refuse BMW's claim.[4] Accordingly, the trial court did not err in granting Colony summary judgment on BMW's bad faith claim.

## Illusory Policy

■ BMW argues an interpretation that the Policy did not provide comprehensive coverage renders the Policy meaningless as to BMW. Specifically, BMW asserts the Policy would be meaningless because customers do not interact with any CARS employees; therefore, BMW could never be covered under the Policy if it only provided liability coverage. Thus, according to BMW, the possibility for liability which could be imputed to BMW through CARS is nonexistent. Although BMW raised the illusory policy issue to the trial court, the trial court never addressed this issue in its order.[5] Additionally, the record is devoid of any evidence BMW ever filed a Rule 59(e) motion. As a result, this issue is not preserved for our review. *See Wilder Corp.*, 330 S.C. at 76, 497 S.E.2d at 733 (holding an issue must have been raised to and ruled upon by the trial court in order to be preserved for appellate

---

4. We note the *Myrick* court also determined the insurer adequately investigated the insured's claim. Here, the trial court did not address BMW's allegation of bad faith in processing BMW's claim in its order. Additionally, BMW failed to raise this issue in a Rule 59(e), SCRCP motion. Therefore, BMW's argument regarding Colony's bad faith in processing its claim is not preserved. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) (holding a party must file a Rule 59(e), SCRCP motion to preserve an issue for review that has been raised to but not ruled upon by the trial court).

5. We note BMW admits in its brief that the trial court failed to address this issue.

review); *see also Elam,* 361 S.C. at 24, 602 S.E.2d at 780 (holding a party must file a Rule 59(e), SCRCP motion to preserve an issue for review that has been raised to but not ruled upon by the trial court).

**Motion to Compel**

BMW argues because the trial court erred in granting summary judgment, it also erred in finding its motion to compel moot. Based upon our decision to affirm the trial court's grant of summary judgment, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address a remaining issue when disposition of a prior issue is dispositive).

**CONCLUSION**

Based on the foregoing, we affirm the trial court.

AFFIRMED.

WILLIAMS and THOMAS, JJ., concur.