**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Three Blind Mice, LLC, d/b/a The Blind Horse Saloon, Respondent,

v.

Colony Insurance Company, Appellant.

Appellate Case No. 2016-000963

Appeal From Greenville County
James R. Barber, III, Circuit Court Judge
Letitia H. Verdin, Circuit Court Judge

Unpublished Opinion No. 2018-UP-402
Heard September 10, 2018 – Filed October 31, 2018
Withdrawn, Substituted and Refiled February 27, 2019

**AFFIRMED IN PART AND REVERSED IN PART**

Eric K. Englebardt, of Wilson & Englebardt, LLC, of Greenville; and David L. Brown and David Grant Harris, II, both of Goldberg Segalla, LLP, of Greensboro, North Carolina; all for Appellant.

William W. Wilkins and Andrew A. Mathias, of Nexsen Pruet, LLC, of Greenville, for Respondent.

Robert Curt Calamari, Daniel Ray McCoy, and Nicholas Andrew Charles, of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Amicus Curiae Property Casualty Insurers Association of America.

_____

**PER CURIAM:**  Colony Insurance Company (Colony) appeals the circuit court's order granting summary judgment to its insured, Three Blind Mice, LLC, d/b/a The Blind Horse Saloon (the Blind Horse), in actions for breach of contract and bad faith denial of coverage.  Colony argues the circuit court erred in granting summary judgment on the breach of contract action because the contract expressly excluded coverage, and on the bad faith action because Colony reasonably interpreted the contract to exclude coverage even if the contract in fact provided coverage.  We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

In a comprehensive general liability (CGL) contract, Colony agreed to pay for the Blind Horse's bodily injury or property damage obligations when "the bodily injury or property damage is caused by an occurrence."  The contract defined occurrence to include accidents.  A patron of the Blind Horse filed suit against the bar alleging that in October 2011, an unknown person playing a boxing arcade game inside the Blind Horse inadvertently struck her and knocked her unconscious.  The Blind Horse presented the complaint to Colony, but Colony denied coverage based on the following two contract exclusions:

> **Assault, Battery or Assault and Battery**
>
> This insurance does not apply to damages or expenses due to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from:
>
> (1) "Assault", "Battery" or "Assault and Battery" committed by any person;
> (2) The failure to suppress or prevent "Assault", "Battery" or "Assault and Battery" by and person;
> (3) The failure to provide an environment safe from "Assault", "Battery" or "Assault and Battery";

(4) The failure to warn of the dangers of the environment which could contribute to "Assault", "Battery" or "Assault and Battery";

(5) "Assault", "Battery", or "Assault and Battery" arising out of the negligent hiring, supervision, or training of any person;

(6) The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of the insured.

. . . .

"Assault" means:

a. An act creating an apprehension in another of immediate harmful or offensive contact, or

b. An attempt to commit a "Battery".

"Battery" means an act which brings about harmful or offensive contact to another or anything connected to another.

"Assault and Battery" means the combination of an "Assault" and a "Battery".

**Athletic or Sport Participants**

This insurance does not apply to "bodily injury" to any person arising out of or resulting from practicing for or participating in any athletic contest, exhibition, activity, game or sport.

The Blind Horse retained counsel to defend and settle the tort claim, and it then commenced the present case against Colony. The circuit court heard the parties' cross-motions for summary judgment before granting the Blind Horse's motion on both causes of action. It ordered Colony to pay $110,897.07 in expenses the Blind Horse incurred defending the tort claim and prosecuting the bad faith claim. This appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. "When reviewing the grant of a summary judgment motion, appellate courts apply the same standard that governs the [circuit] court under Rule 56(c), SCRCP . . . ." *USAA Prop. & Cas. Ins. Co. v. Clegg*, 377 S.C. 643, 653, 661 S.E.2d 791, 796 (2008). "In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party." *Cherry v. Myers Timber Co.*, 404 S.C. 596, 600, 745 S.E.2d 405, 407 (Ct. App. 2013). "Summary judgment should not be granted even when there is no dispute as to the evidentiary facts if there is dispute as to the conclusions to be drawn from those facts." *Piedmont Eng'rs, Architects and Planners, Inc. v. First Hartford Realty Corp.*, 278 S.C. 195, 196, 293 S.E.2d 706, 707 (1982).

## LAW/ANALYSIS

Colony contends the insurance contract's exclusions allow it to deny coverage of the Blind Horse's tort claim. We disagree.

This contract required Colony to pay the Blind Horse for bodily injury or property damage it became obligated to pay arising from an accident, unless it was excluded. The contract did not define accident; however, our supreme court has defined it as "[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt." *Green v. United Ins. Co. of Am.*, 254 S.C. 202, 206, 174 S.E.2d 400, 402 (1970). Because the harmful result was not intended by the bar patron, we believe the insurance policy initially covered the Blind Horse's claim, and our inquiry turns to whether Colony can prove the damages were excluded from coverage. *See Auto Owners Ins. Co. v. Newman*, 385 S.C. 187, 197, 684 S.E.2d 541, 546 (2006) ("The standard CGL policy grants the insured broad liability coverage for property damage and bodily injury which is then narrowed by a number of exclusions."); *Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005) ("Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability.").

## I. Assault and Battery Exclusion

Colony asserts the unknown individual's harmful or offensive contact with the patron—regardless of the individual's intent—brings that claim within the ambit of the contract's definition of battery. It contends the circuit court ignored the plain and unambiguous language of the exclusion and improperly inserted words and phrases into the contract's definition of battery by limiting the exclusion to intentional acts. We disagree.

The exclusion is ambiguous because the definition of "act" within the definition of "battery" remains unclear. Colony is correct that we must, in reviewing the contract, balance our duty to "consider the entire contract between the parties" and "give effect to the whole instrument and to each of its various parts and provisions" with our obligation to give the policy "its plain, ordinary, and popular meaning." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 266 S.C. 584, 592, 225 S.E.2d 344, 349 (1976); *Precision Walls Inc. v. Liberty Mut. Fire Ins. Co.*, 410 S.C. 175, 183, 763 S.E.2d 598, 602 (Ct. App. 2014). Even with these two construction principles in mind, we believe it only logical to conclude the assault and battery exclusion applies to intentional acts that are unexpected. Colony's interpretation would deprive coverage for any harmful act, and as the circuit court found, the exclusion would swallow the coverage. We agree with the circuit court.

Colony further contends that interpreting the policy in the Blind Horse's favor would render the exclusion useless because the policy only provides coverage for accidents and an intentional act would never be covered in the first place. We disagree because intentional acts and accidents are not mutually exclusive. If the unknown individual in this case had intentionally struck the bar patron, it would be an "unexpected happening or event" leading to a "harmful result," and thus initially covered, but could then be removed from coverage by virtue of this exclusion.

Colony also attributes error to the circuit court improperly relying on the common law in determining the exclusion was inapplicable to the Blind Horse's claim. Seeking to define "act" in the contract's "battery" definition, the circuit court applied case law indicating battery was an intentional tort. Had the battery definition been clear, we would agree with Colony that consulting extrinsic evidence was improper. However, in light of our determination that the contract was ambiguous regarding whether the exclusion applied to intentional or unintentional acts, we find no error. Nevertheless, we believe case law was not dispositive in determining whether the incident was a battery because the definition remains unclear. *Compare Longshore v. Saber Sec. Servs., Inc.*, 365 S.C. 554,

561, 619 S.E.2d 5, 9-10 (Ct. App. 2005) ("Assault and battery is generally classified as an intentional tort, as contrasted with a tort based on negligence.") *with Mellen v. Lane*, 377 S.C. 261, 277, 659 S.E.2d 236, 245 (Ct. App. 2008) ("There is a well[-]recognized distinction between criminal assault and a civil action for assault and battery.  In civil actions, the intent, while pertinent and relevant, is not an essential element.").  The exclusion is ambiguous, and we construe it against Colony.  We find no error in the circuit court's inference that this exclusion only applied to intentional acts in order to give effect to the full contract, rather than looking at the exclusion in a vacuum.  The assault and battery exclusion does not apply to this case.

## II.  Athletic or Sport Participant Exclusion

The athletic or sport participant exclusion is likewise inapplicable.  Colony emphasizes the exclusion's first clause: that it applies to bodily injury to "any person."  The circuit court and the Blind Horse concluded the exclusion's latter clause was significant because it limits "any person" to those "practicing for or participating" in the arcade game.  We find this clause is, at best, ambiguous, and cannot exclude the Blind Horse's claim.

Finding no genuine issues of material fact and the Blind Horse was entitled to coverage in the contract, we affirm the circuit court's grant of summary judgment on the breach of contract claim and is entitled to the damages incurred regarding that claim.  *See Clegg*, 377 S.C. at 653, 661 S.E.2d at 796 ("When reviewing the grant of a summary judgment motion, appellate courts apply the same standard that governs the [circuit] court under Rule 56(c), SCRCP . . . .").

## III.  Bad Faith

Next, Colony contends the circuit court erred in granting summary judgment on the bad faith cause of action and awarding the Blind Horse attorney's fees.  We agree.

> The elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance are: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of

> good faith and fair dealing arising on the contract; [and]
> (4) causing damage to the insured.

*BMW of N. Am., LLC v. Complete Auto Recon Servs., Inc.*, 399 S.C. 444, 453, 731 S.E.2d 902, 907 (Ct. App. 2012). "[A]n insurer acts in bad faith when there is no reasonable basis to support the insurer's decision [for contesting a claim]." *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 357 S.C. 631, 645, 594 S.E.2d 455, 462 (2004). "[W]here an insurer has a reasonable ground for contesting a claim, there is no bad faith." *BMW of N. Am.*, 399 S.C. at 453, 731 S.E.2d at 907.

Although we can discern from the pleadings, discovery materials, and affidavits that Colony breached the parties' insurance contract and caused the Blind Horse damages, none of those materials establish as a matter of law that Colony *unreasonably* did so. Construing all inferences in favor of Colony as the non-moving party, the question of whether Colony acted unreasonably or in bad faith should be submitted to the trier of fact. *See Helena Chem.*, 357 S.C. at 644, 594 S.E.2d at 462 ("[S]ince it is a drastic remedy, summary judgment should be cautiously invoked to ensure that a litigant is not improperly deprived of a trial on disputed factual issues."); *see also Dowling v. Home Buyers Warranty Corp., II*, 303 S.C. 295, 298, 400 S.E.2d 143, 145 (1991) (reversing summary judgment because the "facts presented indicate a dispute regarding whether [the insurer] had any reasonable basis for denying [the insured's] claim"); *Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 158, 345 S.E.2d 711, 713 (1986) (rejecting the insurer's contention that the issue of bad faith should not have been submitted to the jury). Therefore, we reverse the circuit court's summary judgment grant on the bad faith cause of action.

Because our reversal continues the litigation, which will also affect the parties' fees, we need not address the propriety of the circuit court's attorney's fees award in the bad faith action. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

Based on the foregoing, the circuit court's order is

**AFFIRMED IN PART and REVERSED IN PART**.

**LOCKEMY, C.J., and HUFF and SHORT, JJ., concur.**